## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STATE OF KANSAS,** *ex rel.* **KRIS W. KOBACH, Attorney General,** | ) |
| | ) |
| | ) |
| **Plaintiff(s),** | ) |
| | ) **CASE NO.   5:25-CV-04109-DDC-GEB** |
| | ) |
| **v.** | ) |
| | ) |
| **SNAP INC.,** | ) |
| | ) |
| **Defendant(s).** | ) |

## MOTION TO REMAND

Plaintiff State of Kansas, *ex rel.* Kris W. Kobach, Attorney General of the State of Kansas, (the "Attorney General") moves under 28 U.S.C. § 1447 to remand this action to enforce state law back to the District Court of Washington County, Kansas Twelfth Judicial District. The Attorney General brought this action against Defendant Snap, Inc. ("Snap") and asserted claims against Snap for violating the Kansas Consumer Protection Act ("KCPA") through its misrepresentations about the prevalence of mature content on Snapchat and its unfair design of its product to promote behavioral addiction and mental health problems among young users. Snap then filed a notice of removal that invoked the federal-officer-removal statute, 28 U.S.C. § 1442(a)(1), and asserted that that statute supplies subject-matter jurisdiction because Snap hosts advertisements on Snapchat for the Department of Homeland Security ("DHS") and the Food and Drug Administration ("FDA") under contractual agreements.

The federal-officer-removal statute requires more, and this Court lacks subject-matter jurisdiction. To successfully invoke the statute, Snap must establish that (1) it acted under an

1

officer of the United States and (2) the Attorney General's claims are "for or relating to" Snap's acts under color of that federal office. 28 U.S.C. § 1442(a)(1). Snap cannot satisfy either requirement.

First, Snap has not acted under a federal officer because DHS and the FDA have no control over Snap and Snap has no authority to act on their behalf. A "private firm must go beyond mere compliance with contractual terms, even if complex, and agree to help carry out the duties or tasks of the federal superior under that superior's strict guidance or control." *Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1253 (10th Cir. 2022). But Snap's agreements with DHS and the FDA expressly disclaim an agency relationship and otherwise give the agencies no control over Snap. Moreover, the text of Section 1442(a)(1) requires Snap to establish that it acted under a *specific* officer, not an agency generally, and Snap's contracts with federal agencies are insufficient to prove it acted under a specific officer.

Second, Snap's violations of the KCPA are also unrelated to any action Snap possibly took under color of federal office because Snap's agreement with DHS and the FDA deprived it of any authority to violate applicable law, including the KCPA. This Court should grant the Attorney General's motion to remand.

## ARGUMENT

Section 1442(a)(1), the federal-officer-removal statute, provides that a "civil action . . . that is commenced in a State court and that is against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof . . . for or relating to any act under color of such office" is removable to federal district court. 28 U.S.C. § 1442(a)(1). To carry its burden of proving federal jurisdiction under this statute, *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005), a private defendant must establish three elements:

"(1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to the claim or claims," *Suncor Energy*, 25 F.4th at 1251.

Snap cannot satisfy either of the first two requirements. First, Snap did not act under a federal officer because federal agencies did not delegate authority to Snap and closely supervise it when they placed advertisements on Snapchat. Second, even if Snap had acted under a federal officer with respect to those advertisements, Snap's actions are unrelated to the Attorney General's claims against Snap for violating the KCPA. Accordingly, Section 1442(a)(1) does not supply jurisdiction in this case, and this Court should grant the Attorney General's motion to remand.

## I. Snap Did Not Act Under a Federal Officer.

A private person "act[s] under" a federal officer for purposes of Section 1442(a)(1) if that person has a "relationship" with a federal officer that "involves subjection, guidance, or control." *Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1193 (10th Cir. 2024) (citation and internal quotation marks omitted). To satisfy this requirement, the private person's activity "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* (citation and internal quotation marks omitted). In other words, "Section 1442(a)(1) removal can apply to private persons who lawfully assist federal officers in the performance of their official duties meaning the private person must be authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." *Suncor Energy*, 25 F.4th at 1251 (cleaned up).

The kind of special relationship required to satisfy the "acting under" requirement is akin to an agency relationship between a federal officer and private person. *See DeFiore v. SOC LLC*, 85 F.4th 546, 554 (9th Cir. 2023) ("[T]he relevant statutory language—'acting under'—is redolent of common-law agency."). The requirement that a defendant perform the "duties or tasks of the

3

federal superior" under the superior's "subjection, guidance, or control," *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151–52 (2007) (citation and internal quotation marks omitted), mirrors the role of an agent who "act[s] on the principal's behalf and subject to the principal's control," RESTATEMENT (THIRD) OF AGENCY § 1.01 (A.L.I. 2006). That Section 1442(a)(1) applies only to claims "for or relating to any act under color of [the federal superior's] office," 28 U.S.C. § 1442(a)(1), further mirrors an agency relationship in which the agent's actual authority is limited to "acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives," RESTATEMENT (THIRD) OF AGENCY § 2.02(1) (A.L.I. 2006); *see also Watson*, 551 U.S. at 150 (describing the "statute's 'basic' purpose" as "protect[ing] the Federal Government from the interference with its 'operations' that would ensue were a State able, for example," to prosecute "'*officers and agents*' of the Federal Government 'acting . . . *within the scope of their authority*'" (emphasis added) (citation omitted)).

Like an agency relationship, which does not exist simply because "one person provides services to another," RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. c (A.L.I. 2006), a mere contract for "goods and services is insufficient to satisfy the federal officer removal statute," *Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 251 (4th Cir. 2021). Accordingly, the Supreme Court described as the "fatal flaw" in a private entity's removal argument the lack of "evidence of any delegation of legal authority" to act "on the Government agency's behalf." *Watson*, 551 U.S. at 156. Likewise, the Ninth Circuit has held that a private entity that "agreed to store and destroy fireworks that had been seized by the federal government" did not act under a federal officer or agency because there was no evidence of the "requisite federal control or supervision over the handling of the seized fireworks." *Cabalce v. Thomas E. Blanchard & Assocs.*, 797 F.3d 720, 723, 728 (9th Cir. 2015); *see also Kansas v. Pfizer, Inc.*, Case No. 6:24-

4

cv-01128-DDC-BGS, 2025 WL 1394240, at *6 (D. Kan. May 14, 2025) (holding that allegations of a conspiracy between a private defendant and the federal government did not satisfy the "acting under" requirement because allegations that the private defendants "'conspired with' the federal government and 'had a meeting of the minds'" did not "suggest that any federal superior exercised 'strict guidance or control' over the alleged conspiracy" (citations omitted)); *DeFiore*, 85 F.4th at 556 (no federal officer jurisdiction because "contractor was [merely] a *nonagent* service provider" (citation and internal quotation marks omitted)).

To successfully invoke Section 1442(a)(1) a "private firm must go beyond mere compliance with contractual terms, even if complex, and agree to help carry out the duties or tasks of the federal superior under that superior's strict guidance or control." *Suncor Energy*, 25 F.4th at 1253. The "closely supervised work" must also "help federal officers fulfill basic government needs, accomplish key government tasks, or produce essential government products—that is, it must stand in for critical efforts the federal superior would need to undertake itself in the absence of a private contract." *Id.* "Wartime production is the paradigmatic example of this special relationship." *Id.* For example, during the Vietnam War, an Agent Orange manufacturer had a sufficiently close relationship with a federal superior when the government provided "detailed specifications concerning the make-up, packaging, and delivery of Agent Orange," compelled the manufacturer to "provide the product to the government's specifications," and continuously supervised the "formulation, packaging, and delivery of Agent Orange." *Id.* at 1252 (quoting *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 400 (5th Cir. 1998)). Alternatively, an "explicit contractual delegation of legal authority to act on the federal superior's behalf" also satisfies the "acting under" requirement. *Id.* at 1253. "[C]arrying out government tasks," however,

does not include doing "something the government *could only accomplish through the private sector.*" *Integris Health*, 123 F.4th at 1195 (quotation marks and citation omitted).

Snap did not act under any federal officer within the meaning of Section 1442(a)(1) when the FDA and DHS ran advertisements on Snapchat. The FDA purchased advertisements on Snapchat through a marketing agency, with the campaign subject to the same terms that apply to all advertisers who pay for ads on Snapchat. Decl. of Madi Howells at 3, 5, *Off. of the Att'y Gen., State of Fla., Dep't of Legal Affs. v. Snap Inc.*, Case No. 3:25-cv-00676-MW-HTC (N.D. Fla. June 13, 2025), Dkt. No. 23-1, attached as Exhibit A.[1] Those terms expressly state that they "do not establish any agency, partnership or joint venture between [the advertiser] and Snap." Snap Inc. Business Services Terms at 11, *Off. of the Att'y Gen., State of Fla., Dep't of Legal Affs. v. Snap Inc.*, Case No. 3:25-cv-00676-MW-HTC (N.D. Fla. June 13, 2025), Dkt. No. 23-7, attached as Exhibit B. And the free advertising that Snap provides DHS about the risks of online sexual exploitation is governed by a Memorandum of Understanding ("MOU") that "shall not be construed to create any legal obligation on the part of either party," and that "[n]o agent or employee of any Party shall be deemed to be an agent or employee of any other Party." MOU Between DHS U.S. Immigrations and Customs Enforcement, Homeland Security Investigations, Cyber Crimes Center, Child Exploitation Investigations Unit and Snap Inc. at 5, *Off. of the Att'y Gen., State of Fla., Dep't of Legal Affs. v. Snap Inc.*, Case No. 3:25-cv-00676-MW-HTC (N.D. Fla. June 13, 2025), Dkt. No. 23-9, attached as Exhibit C. By the express terms of these agreements, Snap was not an agent of either agency and thus not authorized to act on behalf of the agencies nor subject to their control. *Cf. Integris Health*, 123 F.4th at 1193; *Suncor Energy*, 25

---

[1] The page numbers for citations to attached exhibits are by the page number from the electronic filing system of the district court in which the exhibit was previously filed.

F.4th at 1251. The lack of control alone is sufficient to conclude that Snap did not act under DHS or the FDA. *See Integris Health*, 123 F.4th at 1193 (requiring a "subjection, guidance, or control" and "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior" (citations and internal quotation marks omitted)).

Snap also did not carry out the statutory duties of DHS or the FDA in those agencies' stead. The terms of the agreements between Snap and the agencies expressly negate any notion that Snap would carry out these advertising campaigns for the agencies. Specifically, the terms that governed the FDA's relationship with Snap stated that "Snap will not be a sponsor or administrator of [the FDA's] Promotion." Ex. B at 4. And the MOU between Snap and DHS stated that it did not "limit or affect in any way the authority or legal responsibilities of DHS." Ex. C at 4. Snap simply "[p]rovid[ed] advertising credit on the Snapchat app" to DHS, Ex. C at 3; MOU Between the DHS Cyber Crimes Center and Snap Inc. at 3, *Off. of the Att'y Gen., State of Fla., Dep't of Legal Affs. v. Snap Inc.*, Case No. 3:25-cv-00676-MW-HTC (N.D. Fla. June 13, 2025), Dkt. No. 23-10, attached as Exhibit D, and the FDA, through a marketing agency, "placed [an ad] campaign order through the FDA's account on Snap's self-service advertising platform," Ex. A at 5. To be sure, the agencies exercised their own statutory authority when they ran the advertisements. *See* 6 U.S.C. § 242a(c)(4) (authorizing the Director of the DHS Center for Countering Human Trafficking to "operate the Blue Campaign's nationwide public awareness effort and any other awareness efforts needed to encourage victim identification and reporting to law enforcement to prevent human trafficking"); *id.* § 473(b)(2)(F) (authorizing DHS's Child Exploitation Investigations Unit to "collaborate with . . . nongovernmental . . . entities . . . for the sponsorship of, and participation in, outreach and training activities"); 21 U.S.C. § 393(d)(2)(D) (authorizing the Commissioner of Food and Drugs to "conduct[] educational and public information programs relating to the

responsibilities of the [FDA]"). But Snap neither received an express delegation of statutory authority nor "fulfill[ed] basic government needs, accomplish[ed] key government tasks, or produce[d] essential government products" when it hosted advertisements under contractual agreements with the agencies. *Suncor Energy*, 25 F.4th at 1253. Indeed, Snap's role in assisting these public information campaigns as a host of advertisements involved doing "something the government *could only accomplish through the private sector*," which is insufficient to satisfy the "acting under" requirement. *Integris Health*, 123 F.4th at 1195 (quotation marks and citation omitted).

Although the Supreme Court has called for a liberal construction to "give full effect" to the statute, *Colorado v. Symes*, 286 U.S. 510, 517 (1932), it has also cautioned that the statute is "not limitless," *Watson*, 551 U.S. at 147, and called for it "to be construed with highest regard" for the "right of the states . . . to make and enforce their own laws . . . equal to the right of the federal government to exert exclusive and supreme power in the field that by virtue of the Constitution belongs to it," *Symes*, 286 U.S. at 518. An overemphasis on liberal construction caused another federal district court to erroneously deny a remand motion in a similar case involving Snap. *See* Order Denying Pls.' Mot. to Remand at 6–8, *Off. of the Att'y Gen., State of Fla., Dep't of Legal Affs. v. Snap Inc.*, Case No. 3:25-cv-00676-MW-HTC (N.D. Fla. Aug. 13, 2025), Dkt. No. 36, attached as Exhibit E. That court failed to distinguish a mere contract for goods or services (such as Snap's with DHS and the FDA), *see Express Scripts Pharmacy*, 996 F.3d at 251, from "carry[ing] out the duties or tasks of the federal superior under that superior's strict guidance or control," *Suncor Energy*, 25 F.4th at 1253. If a mere contract were sufficient to supply federal jurisdiction, any private person who provides goods or services to the federal government could invoke Section 1442(a)(1). That court also conflated *collaboration* with "subjection, guidance, or

8

control" when it concluded that meetings between the FDA and Snap about the effectiveness of the FDA's advertising campaign and an exchange of research between Snap and DHS meant that Snap was under those agencies' control. Ex. E at 7–8. That view would supply federal jurisdiction whenever a private person works alongside the federal government and is a far cry from the wartime Agent Orange manufacturer who had to comply with detailed specifications in the manufacture of a wartime product while the federal government continuously supervised all aspects of production. *Suncor Energy*, 25 F.4th at 1253. Snap's attempt at removal would, if successful, result in a limitless construction of Section 1442(a)(1), not just a liberal one.

Finally, Snap cannot satisfy Section 1442(a)(1)'s "acting under" requirement for another and fully independent reason: it failed to establish "that it is acting under a specific *officer* of the United States or of one of its agencies." *DeFiore*, 85 F.4th at 562 (Collins, J., dissenting). Although Section 1442(a)(1) references the "United States" and "agenc[ies] thereof," it unambiguously authorizes a private person to remove an action only if the private person was "acting under *that officer*," which can be read to refer only to "*any officer . . . of* the United States or *of* any agency thereof." 28 U.S.C. § 1442(a)(1) (emphasis added). "Accordingly, it is *not* sufficient for a private 'person' invoking this statute to simply assert that he or she is acting, in some general sense, under the 'United States' or an 'agency thereof.'" *DeFiore*, 85 F.4th at 562 (Collins, J., dissenting). So Snap's attempt to invoke Section 1442(a)(1) also fails because Snap simply entered advertising contracts with federal agencies rather than acted under a specific officer. *See* Ex. A at 5; Ex. C at 3; Ex. D at 3–4.

## II.    The Attorney General's Claims Against Snap Are Unrelated to Any Action that Snap Conceivably Took Under Color of Federal Office.

Even if Snap could establish that it acted under a federal officer when DHS and the FDA placed advertisements on Snapchat, Snap's actions with respect to those advertisements are unrelated to the Attorney General's claims against Snap.

Section 1442(a)(1) requires a private person to establish a "sufficient connection between the charged conduct and the asserted official authority." *Pfizer*, 2025 WL 1394240, at *3 (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017)). This Court has explained that where the "federal government all but required [the private defendant] to perform the complained-of actions," those actions are sufficiently related to the asserted official authority to satisfy Section 1442(a)(1). *Id.* at *3. In contrast, contracts that gave private defendants latitude to avoid the complained-of actions were not sufficiently related to the asserted official authority to satisfy Section 1442(a)(1). *Id.* at *4 (discussing *Plaquemines Parish v. BP Am. Prod. Co.*, 103 F.4th 324 (5th Cir. 2024)). Accordingly, this Court held in *Kansas v. Pfizer, Inc.* that claims about a vaccine manufacturer's marketing of a vaccine were not sufficiently related to a federal contract to produce the vaccines because the contract "expressly disclaim[ed] the government's authority over defendant's marketing efforts." *Id.* at *4. In other words, the vaccine manufacturer "didn't perform its challenged marketing practices to fulfill its obligations to the federal government" to provide vaccines. *Id.* at *5.

The Eleventh Circuit has taken a similar and persuasive approach. That court "[l]ook[s] to the heart" of the complaint because "the 'act' anchoring removal must be defined by the 'claim' brought against the defendant." *State v. Meadows*, 88 F.4th 1331, 1344 (11th Cir. 2023). A focus on the heart of the claim accords with the origins of Section 1442(a)(1), which arose "out of the

view that because the defendant's federal employment presumably demanded the performance of the act in controversy, the defendant is entitled to a forum sympathetic to and understanding of the governmental working relationship in question." 14C Wright & Miller's Federal Practice & Procedure § 3726 (rev. 4th ed., May 2025 update). Similar to this Court's *Pfizer* decision, the Eleventh Circuit held in *State v. Meadows* that the requisite causal connection was absent where the defendant was charged with "conspiring to 'unlawfully change the outcome of the election'" because he "had no official authority to operate" on behalf of a political campaign. 88 F.4th at 1345, 1349. Without an official role that "include[d] altering valid election results in favor of a particular candidate," there was "no 'causal connection' between [the defendant's] 'official authority' and his alleged participation in the conspiracy." *Id.* at 1349 (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

The Attorney General's claims under the KCPA against Snap are divorced from any of Snap's actions related to DHS and the FDA advertisements. The Attorney General alleges that Snap misrepresented the prevalence of mature content, including profanity, sexual content, and drug content, on Snapchat and misrepresented that Snapchat is rated for ages "12+" and "T for Teen." Petition ¶¶ 140, 147, Dkt. No. 1-1. The Attorney General also alleges that Snap uses addictive features on Snapchat including infinite scrolling, push notifications, personal interactive metrics, autoplay, ephemeral content, algorithmic recommendations, and the gamification of interaction on the platform and that those addictive features contribute to behavioral addiction in adolescent users, which results in reduced sleep quality and worsened mental health. *Id.* ¶¶ 101–28. And the Attorney General alleges that Snap misrepresented the safety of Snapchat and induced adolescent users to enter unconscionable contractual agreements with Snap in light of the harms visited on adolescents by these addictive features. *Id.* ¶¶ 154–55, 160–71.

11

Snap's agreements with DHS and the FDA do not require Snap to use addictive features, mislead the public about the harmful effects of those features, or deceive the public about the prevalence of mature content on Snapchat. Quite the opposite. Snap's MOU with DHS states that Snap "shall comply with all applicable laws, rules, and regulations, whether now in force or hereafter enacted or promulgated," which includes the KCPA, and further states that its terms "are not intended to alter, amend, or rescind any provisions of Federal or state law." Ex. C at 4; Ex. D at 5. Similarly, the terms that govern Snap's relationship with the FDA state that "Snap will not be required to act, or abstain from action, if such action or abstention would violate Applicable Law, which includes "applicable laws, statute, ordinances, . . . and regulations" like the KCPA. Ex. B at 4, 11. The Attorney General's KCPA claims are thus even further removed from any actions under asserted authority than the marketing efforts in *Pfizer*. In *Pfizer*, the federal government expressly disclaimed authority over the vaccine manufacturer's marketing efforts. 2025 WL 1394240, at *4. But Snap's advertising agreements go one step further: those agreements deprive *Snap* of any authority to violate the KCPA when hosting the agencies' advertisements, let alone require or encourage Snap to do so. *Cf. Meadows*, 88 F.4th at 1345, 1349. So Snap's violations of the KCPA are necessarily unrelated to any actions Snap took with respect to the agencies' advertising campaigns.

In reaching the opposite conclusion, the federal district court that faced a similar issue involving Snap in Florida also gave "relating to" a limitless construction and misapprehended the nature of Snap's relationships with the federal government. *See* Ex. E at 12. That court concluded that imposing liability on Snap, which would require Snap to "purge the accounts of all youth in Florida between the ages of 13 and 15," would "hinder[]" Snap in "effectuating the government's directives." *Id.* That court asked not whether Snap's use of addictive design features was related

to official actions it took under its federal contracts, but whether liability might have *any remote effect on* the federal government's advertising efforts. "In other contexts, the Supreme Court has cautioned that though phrases like 'relate to' and 'connection with' are clearly expansive, courts shouldn't apply them with an uncritical literalism that would turn on infinite connections." *Pfizer*, 2025 WL 1394240, at *6 (cleaned up). Courts cannot "stretch the 'relating to' requirement to permit the removal of cases where the defendant engaged in the challenged conduct of its own initiative in fulfillment of a tangentially related federal directive." *Id.* (quoting *Plaquemines Parish*, 103 F.4th at 343). Yet, stretch the "relating to" requirement is precisely what the federal district court in Florida did when it ruled for Snap. That decision is on appeal. Notice of Appeal, *Off. of the Att'y Gen., State of Fla., Dep't of Legal Affs. v. Snap Inc.*, Case No. 3:25-cv-00676-MW-HTC (N.D. Fla. Aug. 15, 2025), Dkt. No. 38. The Eleventh Circuit has also stayed a related preliminary injunction issued by that district court against enforcement of the Florida law at issue. Order, *Comput. & Commc'ns Indus. Ass'n v. Uthmeier*, No. 25-11881 (11th Cir. Nov. 25, 2025), Dkt. No. 60-2. And, in any event, that district court incorrectly stated that the "federal government has asked Snap to distribute its messages to youth in Florida between the ages of 13 and 17, including in the form of 'Commercials' *that auto-play for the user* and cannot be skipped." Ex. E at 12 (emphasis added). But Snap produced no evidence that the federal government directed it to use such features when running the advertisements. *See* Ex. A at 2–3; Ex. C at 3; Ex. D at 3–4.

Finally, although the Supreme Court has granted certiorari to resolve whether a "causal nexus" is required to satisfy Section 1442(a)(1)'s relatedness requirement, Pet. for Writ of Cert. at i, *Chevron U.S.A. Inc. v. Plaquemines Parish*, 142 S. Ct. 2792 (2025) (No. 24-813), this Court need not wait for the Supreme Court because Snap's removal attempt fails under even the most generous construction of the relatedness requirement.

13

In *Plaquemines Parish*, Petitioners ask the Supreme Court to adopt the D.C. Circuit's construction of the relatedness requirement from *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023). Br. of Petitioners at 30–31, *Chevron U.S.A. Inc. v. Plaquemines Parish*, 142 S. Ct. 2792 (2025) (No. 24-813). The D.C. Circuit held in *Exxon Mobil* that Section 1442(a)(1) "permit[s] removal over 'actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office.'" 89 F.4th at 71 (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)). But the D.C. Circuit also concluded that the oil company defendants in that action could not establish that any of their oil extraction efforts in conjunction with the federal government were "sufficiently 'related to'" the District of Columbia's consumer-protection claim that alleged that the companies "engaged in unlawful misrepresentations by making statements to the general public through advertising campaigns . . . expressing uncertainty about the effect of fossil fuels on anthropogenic climate change." *Id.* at 72. The D.C. Circuit reasoned that "none of the[] alleged misrepresentations" referenced the federal oil extraction efforts nor did any allegation suggest that the companies "engaged in these misrepresentations at the behest of or in coordination with federal officers." *Id.*

So too here. None of the Attorney General's allegations references the advertisements that Snap hosted for the federal government. Nor does any allegation suggest that Snap misrepresented the nature of the content and its unfair design at the "behest of or in coordination with federal officers." *Id.* As explained, Snap's agreements with DHS and the FDA expressly contravene any notion that the federal government instructed Snap to violate the KCPA in furtherance of its advertising efforts. Simply put, Snap's removal effort fails under any construction of the relatedness requirement, and the Supreme Court's impending decision in *Plaquemines Parish* is

no reason to reward Snap's removal attempt with a delay of the Attorney General's effort to enforce Kansas law against Snap.

## CONCLUSION

The Supreme Court has long recognized that the "right of the states . . . to make and enforce their own laws is equal to the right of the federal government to exert exclusive and supreme power in the field that by virtue of the Constitution belongs to it." *Symes*, 286 U.S. at 518. Here, the Attorney General attempted to do just that when he filed this state-law enforcement action. Snap cannot satisfy the requirements of Section 1442(a)(1) simply because it hosted advertisements for federal agencies on Snapchat. This Court lacks subject-matter jurisdiction, and it should grant the Attorney General's motion to remand this action to state court where it belongs.

Dated: December 2, 2025

David H. Thompson*
Brian W. Barnes*
Megan M. Wold*
Jack Tucker*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
mwold@cooperkirk.com
jtucker@cooperkirk.com

*Admitted *pro hac vice*

Respectfully submitted,

/s/ *Paul Shipp*
Paul Shipp (KS #20263)
Assistant Attorney General
Office of the Attorney General
Public Protection Division
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
Tel: 785-296-3751
Fax: 785-291-3699
paul.shipp@ag.ks.gov

*Attorneys for Plaintiff*

15

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States District Court for the District of Kansas by using the appellate CM/ECF system on December 2, 2025. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


Dated: December 2, 2025                    /s/ *Paul Shipp*
                                           Attorney for Plaintiff