**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| STATE OF KANSAS, *ex rel.* KRIS W. KOBACH, Attorney General,<br><br>      Plaintiff,<br><br>      v.<br><br>SNAP INC.,<br><br>      Defendant. | Case No. 5:25-cv-04109-DDC-GEB |

**DEFENDANT SNAP INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE
STATE'S MOTION TO REMAND**

Snap's entitlement to federal jurisdiction under the federal officer removal statute has been further clarified by the Supreme Court's recent decision in *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026). The Supreme Court confirmed a liberal construction of the "connection or association" requirement, ruling that the phrase "relating to" "sweeps broadly" and means only to "have bearing or concern" or "bring into association with or connection with." *Id.* at 1060 (citation omitted). It also held that the "connection or association" requirement does not confine removal to cases in which "federal duties specifically required or strictly caused the challenged conduct." *Id.* at 1060. A defendant need not point to a government instruction that "expressly direct[s] or invite[s]" the acts giving rise to the suit. *Id.* at 1062. It suffices that the suit has "a connection that is not tenuous, remote, or peripheral" to the defendant's federal duties. *Id.* at 1061 (cleaned up). This standard is met when the defendant's government work "may have suffered" if the defendant had not engaged in the conduct that the suit targets. *Id.*

The Supreme Court also rejected the argument that the removing party needs to show that the government specifically directed the conduct at issue in the complaint to satisfy the "acting under" requirement. *Id.* at 1063. The Court explained that such a reading "would leave the 'relating to' requirement with little, if any, independent function." *Id.*

*Plaquemines* thus confirms that Snap is entitled to remove based on its work in designing and fulfilling important public safety and health campaigns for federal agencies. The State's suit seeks to impose liability for certain features that Snap uses to implement the federal agencies' campaigns and ensure the messaging reaches their targeted teenage audience consistent with the agencies' goals and guidance. Even assuming that Snap's contractual *agreements* with DHS and the FDA did not specifically or expressly direct Snap's use of the challenged features, the jurisdictional discovery that the State sought confirms the close supervision the federal agencies

1

had over their Snapchat campaigns, and clarifies that the agencies (not Snap) indeed directed the placement of their advertisements, including by specifically and expressly requesting placements that utilize the features at the center of the State's Petition. Snap's use of its platform and features to deliver the federal government's messages to teenagers at the very least *relates to* Snap's federal duties. *Plaquemines* squarely rejects the argument that the removal statute "requires that [Snap] was 'acting under' a federal officer in taking the specific actions challenged in suit." *Id.* at 1062.

The State's Motion to Remand (Dkt. No. 11) (the "Motion") should be denied.[1]

## I.    *Plaquemines* Rejects Any Requirement That the Government Must Have Directed the Specific Activities Challenged in the Suit

*Plaquemines* confirms that the State's suit against Snap "fits comfortably within the ordinary meaning of a suit 'relating to' the performance of federal duties." *Id*. at 1061. There, Plaquemines Parish brought state-law claims against Chevron for Chevron's alleged "failure to use prudent industry practices in extracting crude oil." *Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 341 (5th Cir. 2024). Chevron removed, arguing that crude oil produced from those methods was used downstream "at their refineries to comply with their World War II-era contracts with the government." *Id*. at 331–32. The Fifth Circuit deemed the connection between the suit and Chevron's government contracts too attenuated to satisfy the "relating to" requirement because the federal contracts at issue did not include directives concerning the challenged conduct. *Id*. at 336–43. The Parish's claims arose from the manner in which Chevron extracted *crude* oil. But Chevron's government contracts said nothing about the sourcing of crude or extraction methods. Chevron could not "point to a single directive in [its] contract that touched upon its upstream oil production." *Id*. at 339–40 (citation omitted). Indeed, Chevron had "complete latitude

---

[1] In filing this Supplemental Brief, Snap does not waive any right, defense, affirmative defense, or objection, including any challenges to venue and/or the exercise of personal jurisdiction.

82742713v1

to forego producing any crude and instead to buy it on the open market." *Id.* at 341 (cleaned up).

The Supreme Court reversed, holding that "[t]he phrase 'relating to' sweeps broadly" and can be satisfied by an "association" or "connection [that] is indirect," so long as it is not "tenuous, remote, or peripheral." *Plaquemines*, 146 S. Ct. at 1060–61 (cleaned up). The Court thus rejected the notion that because "Chevron's refining contract did not specify *how* to obtain or produce crude oil," its "crude-oil production was unrelated to the performance of its federal refining duties." *Id.* at 1062 (emphasis in original). It sufficed that the Parish's suit challenged "Chevron's actions that allowed it to increase its production of crude oil," and that crude oil was an important input in fulfilling Chevron's refining contracts. *Id.* at 1061.[2]

*Plaquemines* thus proscribes the State's argument that Snap has not satisfied the "connection or association" requirement because "Snap's agreements with DHS and the FDA do not require Snap to use addictive features" or engage in other challenged conduct. Mot. at 12. It also illustrates why the State cannot prevail on a theory that none of its "allegations references the advertisements that Snap hosted for the federal government." Mot. at 14. Under *Plaquemines*, there can be a "connection or association" even if the lawsuit was not "specifically designed to affect" the defendant's federal duties. *Plaquemines*, 146 S. Ct. at 1060 (citation omitted).

The State's Motion heavily relies upon this Court's pre-*Plaquemines* opinion in *Kansas v. Pfizer*, 2025 WL 1394240 (D. Kan. May 14, 2025). That reliance is misplaced, as this Court's *Pfizer* decision had cited the now-reversed Fifth Circuit decision in analyzing the "connection or association" requirement, with the decision serving as the Court's primary example of a case that fails the requirement and the main benchmark against which it measured the case against Pfizer.

---

[2] The Supreme Court observed that Chevron's federal duties were "closely" related to the lawsuit. *Id.* at 1060. The Court did so as part of its explanation that Chevron "fits comfortably" within the statutory test, *id.* at 1061; it did not hold that a "close" relationship was *necessary* to satisfy the broad requirement. Regardless, for all the reasons explained, the conduct challenged in this suit is "closely" related to Snap's federal duties.

3

82742713v1

Now that the Fifth Circuit ruling upon which this Court relied has been reversed, *Pfizer* can no longer be asserted as a valid basis to support remand.[3]

Specifically, the State's articulation of the "connection or association" requirement chiefly relies on quotations from, and characterizations of *Pfizer* that cannot be reconciled with *Plaquemines*. Mot. at 10. For example, the State suggests that federal officer removal is only appropriate where the "federal government all but required [the private defendant] to perform the complained-of actions." *Id.* (quoting *Pfizer*, 2025 WL 1394240, at *3) (alteration in original). And it focused on this Court's finding that *Pfizer* "didn't perform its challenged marketing practices to fulfill its obligations to the federal government." *Id.* (quoting *Pfizer*, 2025 WL 1394240, at *5). Relatedly, the State argued that "contracts that gave private defendants latitude to avoid the complained-of actions" could not form the basis for removal. *Id.* (citing *Pfizer*, 2025 WL 1394240, at *4). But as *Plaquemines* has made clear, a defendant can satisfy the "connection or association" requirement regardless of whether its federal duties specifically invited, directed, required, or caused the conduct challenged by the complaint. *Plaquemines*, 146 S. Ct. at 1060, 1062.

The State's Motion relies on other outdated law that cannot be reconciled with *Plaquemines*. First, it invokes dicta from an earlier Eleventh Circuit decision in a criminal case involving a former federal officer, Mot. at 10–11, that courts must "[l]ook[] to the heart" of a complaint because "the 'act' anchoring removal must be defined by the 'claim' brought against the defendant," *State v. Meadows*, 88 F.4th 1331, 1344 (11th Cir. 2023). But that is incompatible with *Plaquemines*, which establishes that a defendant's work under the federal government need not even have "specifically invited," "expressly direct[ed]," "specifically required," or "strictly

---

[3] The State's reliance on *Pfizer* was misplaced for reasons independent of the fact that the legal standard was called into question by the pendency of *Plaquemines* at the Supreme Court, as Snap explained in its Opposition to the Motion (Dkt. No. 23) (the "Opposition"). Opp. at 13–14. The Supreme Court's evisceration of the Fifth Circuit legal standard upon which *Pfizer* was premised is a further reason why the outcome in *Pfizer* should not result here.

82742713v1

caused" the conduct being challenged in the suit. *Plaquemines*, 146 S. Ct. at 1060, 1062. It would be nonsensical to impose upon the defendant a stricter requirement of showing that the conduct at issue must form the "heart" of the complaint.[4] Second, the Motion cites a portion of a treatise—discussing caselaw that has been long superseded by amendments to the removal statute and now *Plaquemines*—for the proposition that the federal officer removal statute "arose out of the view that because the defendant's federal employment presumably *demanded* the performance of the act in controversy, the defendant is entitled to" a federal forum. Mot. at 10–11 (citation modified). That proposition is similarly inconsistent with *Plaquemines*; if a defendant need not show the challenged conduct was invited or caused by federal duties, it certainly need not show the conduct was *demanded* by a federal officer.

## II. Snap Meets the "Connection or Association" Requirement Under *Plaquemines*

Snap's work for the DHS and FDA campaigns is related to the State's suit under *Plaquemines*. The State seeks to hold Snap liable for conduct connected to its implementation of the agencies' advertising campaigns, including the use of certain features to deliver their public safety and health messages. Snap relied on algorithms to recommend and deliver content to ensure that those messages reached the government's intended audience of teens aged 13 to 17. *See* Opp. at 12. As alleged by the State, these algorithms are part of the purportedly addictive and unconscionable design of Snapchat that amounts to violations of the KCPA. *See id.*; Pet. ¶¶ 105, 124. Snap also delivers the messages in accordance with placement selections made by the agencies, including via Stories, Spotlight, and Discover, which the State alleges include design features (*e.g.*, automatic expiration, "infinite scrolling," and "auto-play") that lead to addiction and

---

[4] Even if *Meadows* established a "heart" of the complaint standard for *criminal* cases, *Plaquemines* confirms this standard cannot be extended to *civil* removal actions. *See Meadows*, 88 F.4th at 1348 (noting that "a more detailed showing might be necessary" to remove a criminal case (citation omitted)).

82742713v1

mental health harms in children in violation of the KCPA. *See* Opp. at 12–13; Exs. 11–14 to Snap's Sur-reply to the Motion (Dkt. No. 51) (the "Sur-reply") (illustrating how agencies select specific placements and reflecting certain of their placement selections). "If [Snap] had refrained from" using Stories, Spotlight, and Discover, however, its work reaching teens "may have suffered." *Plaquemines*, 146 S. Ct. at 1061. It makes no difference whether Snap's federal duties were "specifically designed to affect" the conduct challenged by the State. *Id.* at 1060 (citation omitted).

Indeed, the State has never disputed that the challenged features allow Snap to more effectively reach the government's intended teen audience (it cannot). *Cf. id.* at 1061 ("[N]o party disputes[] this suit will challenge Chevron's actions that allowed it to increase its production of crude oil."). The capacity to effectively message the agencies' content is key. DHS has touted its relationship with Snap, focusing on Snapchat's ability to resonate with teens, *see* Opp. at 13, and identifying Snap as its most impactful partner in engaging teens, *e.g.*, Sur-reply Ex. 2. The FDA also turns to Snap because of its ability to engage teens. *See* Opp. at 13. In 2024, for example, the FDA targeted all of its The Real Cost Snapchat advertisements to users aged 13 to 17, Sur-reply Ex. 14, which was met with over 1.6 billion impressions from that audience. Goldberg Decl. ¶ 5.

If anything, the connection between this suit and Snap's work with DHS and the FDA is stronger than the connection in *Plaquemines*. The relevant federal activity in *Plaquemines* was Chevron's method of extracting crude oil—something Chevron's federal contracts were "simply not concerned with." *Plaquemines*, 103 F.4th at 340 (citation omitted). Indeed, it took an expert report to draw out the connection between the contracts and the lawsuit. *See Plaquemines*, 146 S. Ct. at 1059. Here, by contrast, the association is clear from the face of the State's Petition and further demonstrated by the record. *E.g.*, Goldberg Decl. ¶ 17 (FDA asked for proposals on reaching teen users with campaign messaging); Beauchere Decl. ¶ 19 (quoting Know2Protect

6

campaign manager who stated that Snap helps DHS reach a "critical audience" it could not reach on its own); Sur-reply at 3 (referencing Snap's advice on user engagement). And the State objects to the very features that Snap uses (at the agencies' request) to ensure that DHS and the FDA's messages reach their intended audience. Moreover, the agencies' campaigns are implicated by the State's KCPA claims regarding age ratings, because the campaign topics fall within the State's broadly defined categories of content that are allegedly inappropriate for teens. *See* Opp. at 14–15.

This basis for removal here is also distinct from the bases cited in the lower court false-advertising cases briefly cited in *Plaquemines*. *See Plaquemines*, 146 S. Ct. at 1061 (citing *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023); *Minnesota v. American Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023)). The defendants' federal duties in those cases—"production of military-grade fuel, operation of federal oil leases, and participation in strategic energy infrastructure," including activities taking place many decades earlier (as far back as World War II)—bore "little to no relationship" to the conduct challenged in the suit, which alleged violations of consumer protection statutes based on theories of false advertising. *Exxon Mobil*, 89 F.4th at 156 (quoting *American Petroleum Inst.*, 63 F.4th at 715). Specifically, the challenged conduct in those cases arose out of the energy companies' "marketing activities to the general public" as to the overall effects of consumers' fossil-fuel *use*—not the effects of the companies' fossil-fuel *production*—on the global climate. *Id.* There was no allegation that the fossil-fuel companies needed to change their fossil-fuel *production* activities whatsoever (whether for the federal government, or otherwise). Thus, unlike in *Plaquemines* and this case, those lawsuits did not seek to hold the defendants liable for activities related to their fulfillment of federal contracts.

Snap has gone beyond what is required by the removal statute by demonstrating a close and direct connection between the State's claims and Snap's partnerships with DHS and the FDA.

7

As explained herein and in Snap's Opposition, the State's claims relate to the subject matters of the federal agencies' campaigns and rely on allegations about Snapchat features that the agencies select for disseminating their messaging to their desired teenage audiences. Therefore, and unlike in *Exxon* and *American Petroleum Institute*, the State's requested injunctive relief in this case would disrupt the federal agencies' ongoing and upcoming campaigns.

### III.  *Plaquemines* Supports Snap's Construction of the "Acting Under" Requirement

Although the Supreme Court did not decide whether the defendant in *Plaquemines*, Chevron*,* "acted under" the federal government, its decision precludes any suggestion that the government must have directed the specific activities at issue in the suit—whether under the "connection or association" requirement or "acting under" requirement. *See Plaquemines*, 146 S. Ct. at 1062–63. Louisiana argued to the Supreme Court that Chevron would fail the "acting under" requirement because the federal government had not specifically directed its extraction activities. *See id.* at 1062. The Supreme Court held that the "acting under" test does not demand any such showing, and that instead Louisiana's argument conflated the "acting under" requirement with the "connection or association" (or the "relating to") requirement. *Id.* at 1063. This type of conflation excises the phrase "or relating to" out of the statute, language Congress specifically amended the statute to add. *See id.*; Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b), 125 Stat. 545; Opp. at 6–7 (collecting cases).[5] The statute, as amended, "contemplates removal of suits against officers or their agents for acts that were not done under color of their offices, so long as the suits 'relat[e] to' such acts." *Plaquemines*, 146 S. Ct. at 1063 (alteration in original).

That was the situation in *Plaquemines*. As the Fifth Circuit recognized, as a "private party

---

[5] The *Plaquemines* holding is also at odds with any suggestion that Snap could only "act under" DHS and the FDA if the statutes requiring the agencies to act also specifically required them to do so via Snapchat. If there is no requirement that the government's contract with the defendant specify the conduct giving rise to the suit, *see Plaquemines*, 146 S. Ct. at 1062, then it follows that there is no requirement that a statute must *direct* that conduct.

82742713v1

working under a federal contract to produce an item the government needed," Chevron was the "archetypal defendant acting under a federal officer." *Plaquemines*, 103 F.4th at 334 (citation modified). The separate issue of whether Chevron's contracted-for work in refining aviation gasoline was sufficiently connected to the lawsuit was a question for the "relating to"—not the "acting under"—requirement. *Plaquemines*, 146 S. Ct. at 1063.

The same is true here. Snap satisfies the "acting under" requirement because it has contracted with DHS and the FDA to provide bespoke services that assist those agencies in accomplishing their statutory responsibilities. *See* Opp. at 7–10. Snap works under the close supervision and guidance of both agencies to create essential government products, including custom research for DHS and custom Lenses for both agencies' initiatives. *See id.*; Sur-reply at 1–5. The gravity of these government tasks and Snap's assistance in fulfilling them is borne out in the record. The advertisement campaigns address serious safety and health risks to young Americans and have an impact in saving young lives. Not only do these Snapchat campaigns have incredible reach, Beauchere Decl. ¶¶ 15, 22; Goldberg Decl. ¶ 5, they have been a primary driver of the overall success of the initiatives, Beauchere Decl. ¶¶ 18–20; Sur-reply Ex. 2.[6] The State's efforts to paint the agencies as just "any other advertising customer," State's Reply in Support of the Motion (Dkt. No. 45) (the "Reply") at 5, who engage Snap in "mere contract[s] for goods and services," Mot. at 8, are disingenuous and wrongly minimize the importance of this work.

*Plaquemines* also further supports Snap's position that a removing defendant need not identify a specific officer to satisfy the "acting under" requirement. The Supreme Court did not

---

[6] Public outreach and education and promotion of government-specific initiatives (like the ones at issue here) are undoubtedly government tasks conducted pursuant to statutes, regardless of whether other entities engage in public awareness campaigns on related topics. The conduct of unrelated private entities has nothing to do with (and does not diminish) the federal government's statutory obligations. *See Cnty. Bd. of Arlington Cnty. v. Express Scripts*, 996 F.3d 243, 253-54 (4th Cir. 2021) (pharmacies "acted under" the government by operating a mail order pharmacy).

82742713v1

disturb the Fifth Circuit's ruling that Chevron satisfied the requirement based on its contracts with a federal agency called the Defense Supplies Corporation. *Plaquemines*, 146 S. Ct. at 1060 n.2; *Plaquemines*, 103 F.4th at 337. The Fifth Circuit's analysis focused on whether the defendants "were 'acting under' a federal officer *or agency*." *Plaquemines*, 103 F.4th at 334–35 (emphasis added). There was no discussion of Chevron's interactions with any individual officer in either the Supreme Court or Fifth Circuit decision. Any passing reference to "acting under" "federal officers" by the Supreme Court does not support a departure from the established law and practice of assessing removing defendants' relationship with federal agencies. *See* Opp. at 11.

Finally, *Plaquemines* undermines the State's position that Snap must establish a principal-agent or similar relationship. *See* Mot. at 3–4; Reply at 5. The Fifth Circuit found that Chevron had acted under a federal officer due to its status as a "military contractor." *Plaquemines*, 146 S. Ct. at 1058, 1059–61. Neither the Supreme Court nor the Fifth Circuit engaged in any analysis akin to a principal-agent analysis. The Supreme Court's passing references to federal "officers and their agents," *id.* at 1057, 1063, cannot reasonably be extrapolated to signal that a principal-agent or similar relationship is needed to satisfy the "acting under" requirement. The Supreme Court has also previously made clear that removal could be supported by "evidence of any contract, any payment, any employer/employee relationship, *or* any principal/agent arrangement." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 156 (2007) (emphasis added). This is further supported by Tenth Circuit precedent focused on "which types of contracts between federal superiors and private firms are special enough to satisfy the 'acting under' prong." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1252–53 (10th Cir. 2022).

For the foregoing reasons and those stated in Snap's Opposition and Sur-reply, this Court should deny the State's Motion to Remand and direct this action to proceed before this Court.

82742713v1

DATED: May 15, 2026

Respectfully Submitted,

/s/ *Brian C. Fries*
Brian C. Fries (KS #15889)
Carrie E. Josserand (KS #18893)
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108-2618
Tel: (816) 292-2000
brian.fries@lathropgpm.com
carrie.josserand@lathropgpm.com

Edward D. Greim (KS #21077)
Paul E. Brothers (KS #26863)
Matthew R. Mueller (KS #28499)
Katherine E. Mitra (KS #79151)
GRAVES GARRETT GREIM LLP
1100 Main Street, Suite 2700
Kansas City, MO 64105
Tel: (816) 256-3181
edgreim@gravesgarrett.com
pbrothers@gravesgarrett.com
mmueller@gravesgarrett.com
kmitra@gravesgarrett.com

Jeannie S. Rhee (*admitted pro hac vice*)
L. Rush Atkinson (*admitted pro hac vice*)
Kyle Smith (*admitted pro hac vice*)
Elizabeth N. Brandt (*admitted pro hac vice*)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, D.C. 20004-2637
Tel: (202) 240-2900
jrhee@dirllp.com
ratkinson@dirllp.com
ksmith@dirllp.com
ebrandt@dirllp.com

Christine M. Ray (*admitted pro hac vice*)
DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10007
Tel: (212) 470-1306
cray@dirllp.com

*Attorneys for Defendant Snap Inc.*

11

82742713v1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2026, a copy of the foregoing document was served via the Court's electronic filing system, and by Electronic Mail, on all counsel of record.


/s/ *Brian C. Fries*
Brian C. Fries
An Attorney for Defendant

82742713v1