APPEAL,PROTO

# U.S. District Court
# DISTRICT OF KANSAS (Topeka)
# CIVIL DOCKET FOR CASE #: 5:25−cv−04109−DDC−GEB

Kansas, State of, ex rel. v. Snap Inc.
Assigned to: District Judge Daniel D. Crabtree
Referred to: Magistrate Judge Gwynne E. Birzer
Demand: $75,000
Case in other court: District Court of Washington County, Kansas, WS−2025−CV−000015
Cause: 28:1442 Petition for Removal

Date Filed: 11/12/2025
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**Kansas, State of**
*ex rel.; Kris W. Kobach, Attorney General*

represented by

**Brian W. Barnes**
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
202−220−9600
Fax: 202−220−9601
Alternative Phone:
Cell Phone:
Email: bbarnes@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**David H. Thompson**
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
202−220−9600
Fax: 202−220−9601
Alternative Phone:
Cell Phone:
Email: dthompson@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Megan M. Wold**
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 22036
202−220−9600
Fax: 202−220−9601

Alternative Phone:
Cell Phone:
Email: mwold@cooperkirk.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Paul Shipp**
Office of Attorney General
Public Protection Division
120 SW 10th Ave
2nd Floor
Topeka, KS 66612
785−368−8451
Fax: 785−291−3699
Alternative Phone: 785−670−0540
Cell Phone: 785−380−7447
Email: paul.shipp@ag.ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 20263*
*Bar Status: Active*

**Jack Tucker**
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
202−220−9600
Fax: 202−220−9601
Alternative Phone:
Cell Phone:
Email: jtucker@cooperkirk.com
***TERMINATED: 07/17/2026***
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Phv*

V.

**Defendant**

**Snap Inc.** represented by

**Carrie E. Josserand**
Lathrop GPM, LLP − Kansas City
2323 Grand Blvd., Suite 800
Kansas City, MO 64108
816−292−2000
Fax: 816−292−2001
Alternative Phone: 913−451−5135
Cell Phone:
Email: carrie.josserand@lathropgpm.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 18893*
*Bar Status: Active*

**Christine M. Ray**
Dunn Isaacson Rhee LLP
11 Park Place
New York, NY 10007
202−240−2900
Alternative Phone:
Cell Phone:
Email: cray@dirllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Edward D. Greim**
Graves Garrett Greim, LLC − KC
1100 Main Street, Suite 2700
Kansas City, MO 64105−5195
816−256−3181
Alternative Phone: 816−256−3181
Cell Phone:
Email: edgreim@gravesgarrett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 21077*
*Bar Status: Active*

**Elizabeth N. Brandt**
Dunn Isaacson Rhee LLP − DC
401 Ninth Street NW, Suite 800
Washington, DC 20004−2637
202−240−2900
Alternative Phone:
Cell Phone:
Email: ebrandt@dirllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Jeannie S. Rhee**
Dunn Isaacson Rhee LLP
401 Ninth Street NW, Suite 800
Washington, DC 20004−2637
202−240−2900
Alternative Phone:

Cell Phone:
Email: jrhee@dirllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Katherine Eliza Mitra**
Graves Garrett Greim, LLC − KC
1100 Main Street, Suite 2700
Kansas City, MO 64105−5195
816−256−3181
Alternative Phone:
Cell Phone:
Email: kmitra@gravesgarrett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 79151*
*Bar Status: Active*

**Kyle N. Smith**
Dunn Isaacson Rhee LLP
401 Ninth Street NW, Suite 800
Washington, DC 20004−2637
202−240−2900
Alternative Phone:
Cell Phone:
Email: ksmith@dirllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**L. Rush Atkinson**
Dunn Isaacson Rhee LLP
401 Ninth Street NW, Suite 800
Washington, DC 20004−2637
202−240−2900
Alternative Phone:
Cell Phone:
Email: ratkinson@dirllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Matthew Richard Mueller**
Graves Garrett Greim, LLC − KC
1100 Main Street, Suite 2700

Kansas City, MO 64105−5195
816−256−3181
Fax: 816−256−5958
Alternative Phone:
Cell Phone:
Email: mmueller@gravesgarrett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28499*
*Bar Status: Active*

**Paul Eugene Brothers**
Graves Garrett Greim, LLC − KC
1100 Main Street, Suite 2700
Kansas City, MO 64105−5195
816−256−3181
Alternative Phone:
Cell Phone:
Email: pbrothers@gravesgarrett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 26863*
*Bar Status: Active*

**Timothy John Hadachek**
Lathrop GPM, LLP − Kansas City
2323 Grand Blvd., Suite 800
Kansas City, MO 64108
800−476−4224
Alternative Phone:
Cell Phone:
Email:
timothy.hadachek@lathropgpm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 79038*
*Bar Status: Active*

**Brian C. Fries**
Lathrop GPM, LLP − Kansas City
2323 Grand Blvd., Suite 800
Kansas City, MO 64108
816−292−2000
Fax: 816−292−2001
Alternative Phone: 816−460−5326
Cell Phone:
Email: brian.fries@lathropgpm.com
*ATTORNEY TO BE NOTICED*
*Bar Number: 15889*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 11/12/2025 | 1 | NOTICE OF REMOVAL from the Washington County, Kansas District Court, case number WS−2025−CV−000015, trial location of Topeka (Filing fee $405, Internet Payment Receipt Number AKSDC−6821639.), filed by Snap, Inc. (Attachments: # 1 Exhibit A − Redacted Petition, # 2 Exhibit B − Summons, # 3 Exhibit C − Motion to File Under Seal, # 4 Exhibit D − Order Granting Motion to Seal) (Fries, Brian) (Entered: 11/12/2025) |
| 11/12/2025 | 2 | CIVIL COVER SHEET by Defendant Snap, Inc. (Fries, Brian) (Entered: 11/12/2025) |
| 11/13/2025 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge Daniel D. Crabtree and Magistrate Judge Gwynne E. Birzer for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)<br><br>**NOTICE OF MAGISTRATE JUDGE AVAILABILITY: A United States magistrate judge is available to conduct all proceedings in this civil action if all parties voluntarily consent. Information & consent forms are available at https://www.uscourts.gov/file/459/download (jsh) (Entered: 11/13/2025)** |
| 11/17/2025 | 3 | CLERKS ORDER EXTENDING TIME until 12/03/2025 for Defendant Snap, Inc. to answer or otherwise plead. Signed by deputy clerk on 11/17/2025. (smh) (Entered: 11/17/2025) |
| 11/19/2025 | 4 | JOINT MOTION for Filing Schedule on Motion to Remand and Motion to Dismiss by Defendant Snap, Inc. (Greim, Edward) (Entered: 11/19/2025) |
| 11/19/2025 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 4 Joint Motion for Filing Schedule on Motion to Remand and Motion to Dismiss. The motion will be resolved by the District Judge. (kf)** (Entered: 11/19/2025) |
| 11/20/2025 | 5 | ORDER granting the parties' Joint Motion for Filing Schedule (Doc. 4 ). The court adopts the parties' proposed schedule for briefing on plaintiff's anticipated Motion to Remand. Plaintiff's Motion to Remand is due by December 2, 2025. Defendant's response is due by December 23, 2025. And plaintiff's reply is due by January 6, 2026. The court suspends the deadline for defendant to file a responsive pleading. If the court denies plaintiff's Motion to Remand, defendant will have 30 days after the Order denying the Motion to Remand to file a Motion to Dismiss or Answer. Our court's local rules will govern the rest of the briefing schedule for the Motion to Dismiss unless the parties move to alter those default rules. Signed by District Judge Daniel D. Crabtree on 11/20/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 11/20/2025) |
| 11/25/2025 | 6 | MOTION for attorney Brian W. Barnes to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6834623.) by Plaintiff Kansas, State of. (referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 Affidavit, # 2 ECF Registration Form ECF Registration Form)(Shipp, Paul) (Entered: 11/25/2025) |
| 11/25/2025 | 7 | MOTION for attorney David H. Thompson to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6834681.) by Plaintiff Kansas, State of. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 ECF Registration Form, # 2 Affidavit)(Shipp, Paul) (Entered: 11/25/2025) |
| 11/25/2025 | 8 | |

| | | |
|---|---|---|
| | | MOTION for attorney Megan M. Wold to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6834689.) by Plaintiff Kansas, State of. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 Affidavit, # 2 ECF Registration Form)(Shipp, Paul) (Entered: 11/25/2025) |
| 11/26/2025 | 9 | MOTION for attorney Jack Tucker to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6835617.) by Plaintiff Kansas, State of. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 ECF Registration Form, # 2 Affidavit)(Shipp, Paul) (Entered: 11/26/2025) |
| 11/26/2025 | 10 | ORDER granting 6 , 7 , 8 , 9 Motions to Appear Pro Hac Vice of David H. Thompson, Brian W. Barnes, Megan M. Wold, and Jack Tucker for State of Kansas pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Gwynne E. Birzer on 11/26/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (als) (Entered: 11/26/2025) |
| 12/02/2025 | 11 | MOTION to Remand by Plaintiff Kansas, State of. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Shipp, Paul) (Entered: 12/02/2025) |
| 12/02/2025 | 12 | STATE COURT RECORDS from District Court of Washington County, Kansas. (Attachments: # 1 Exhibit 1 − State Court Records)(Fries, Brian) (Entered: 12/02/2025) |
| 12/02/2025 | 13 | SUMMONS RETURNED EXECUTED by Kansas, State of upon Snap, Inc. (Originally filed Washington County District Court on 11/14/2025) See DE 12−1 Pg. 160 for document. (msb) (Entered: 12/03/2025) |
| 12/08/2025 | 14 | CORPORATE DISCLOSURE STATEMENT by Snap, Inc. identifying None as corporate parent. (Fries, Brian) (Entered: 12/08/2025) |
| 12/19/2025 | 15 | MOTION for attorney Christine M. Ray to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6855718.) by Defendant Snap, Inc. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 Affidavit, # 2 ECF Registration Form)(Fries, Brian) (Entered: 12/19/2025) |
| 12/19/2025 | 16 | MOTION for attorney Elizabeth N. Brandt to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6855728.) by Defendant Snap, Inc. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 Affidavit, # 2 ECF Registration Form)(Fries, Brian) (Entered: 12/19/2025) |
| 12/19/2025 | 17 | MOTION for attorney Jeannie S. Rhee to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6855738.) by Defendant Snap, Inc. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 Affidavit, # 2 ECF Registration Form)(Fries, Brian) (Entered: 12/19/2025) |
| 12/19/2025 | 18 | MOTION for attorney Kyle N. Smith to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6855753.) by Defendant Snap, Inc. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 Affidavit, # 2 ECF Registration Form)(Fries, Brian) (Entered: 12/19/2025) |
| 12/19/2025 | 19 | MOTION for attorney L. Rush Atkinson to appear pro hac vice (Pro hac vice fee $50, Internet Payment Receipt Number AKSDC−6855755.) by Defendant Snap, Inc. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Attachments: # 1 Affidavit, # 2 ECF Registration Form)(Fries, Brian) (Entered: 12/19/2025) |

| | | |
|---|---|---|
| 12/22/2025 | 20 | ORDER granting 15 , 16 , 17 , 18 and 19 Motions to Appear Pro Hac Vice of Christine M. Ray, Elizabeth N. Brandt, Jeannie S. Rhee, Kyle N. Smith, and L. Rush Atkinson for Snap, Inc. pursuant to D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Gwynne E. Birzer on 12/22/25. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (als) (Entered: 12/22/2025) |
| 12/23/2025 | 21 | ORDER. The undersigned Magistrate Judge communicated with counsel, via letter dated December 8, 2025, regarding deferred scheduling in this case. Having received no response, the Rule 16 conference will be postponed until after the pending Motion for Remand (ECF No. 11) has been decided by the District Judge. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 12/23/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 12/23/2025) |
| 12/23/2025 | 22 | ENTRY OF APPEARANCE by Timothy John Hadachek on behalf of Snap, Inc. (Hadachek, Timothy) (Entered: 12/23/2025) |
| 12/23/2025 | 23 | SEALED OPPOSITION by Defendant Snap, Inc. re 11 Motion to Remand. (Hadachek, Timothy) Modified on 8/27/2026 to remove Provisionally from docket text; document to remain under seal per 63 order (kgs). (Entered: 12/23/2025) |
| 12/23/2025 | 24 | SEALED EXHIBITS to 27 Declaration of Jacqueline F. Beauchere by Defendant Snap, Inc. (Attachments: # 1 Exhibit A − to the Declaration of J. Beauchere, # 2 Exhibit B − to the Declaration of J. Beauchere) (Hadachek, Timothy) Modified on 1/29/2026 to link. (mam) Modified on 8/27/2026 to remove provisionally from text − exhibits to remain sealed per 63 order, main document unsealed (kgs). (Entered: 12/23/2025) |
| 12/23/2025 | 25 | SEALED EXHIBITS to 28 Declaration of Alec Goldberg. (Attachments: # 1 Exhibit E − to the Declaration of A. Goldberg, # 2 Exhibit F − to the Declaration of A. Goldberg, # 3 Exhibit G − to the Declaration of A. Goldberg) (Hadachek, Timothy) Modified on 1/29/2026 to link. (mam) Modified on 8/27/2026 to remove provisionally from docket text − exhibits to remain sealed per 63 order, main document unsealed (kgs). (Entered: 12/23/2025) |
| 12/23/2025 | 26 | NOTICE OF PROPOSED SEALED RECORD by Snap, Inc. re Docs. 23 − 25 . (Hadachek, Timothy) Modified on 1/29/2026 to re−title. (mam) (Entered: 12/23/2025) |
| 12/23/2025 | 27 | DECLARATION of Jacqueline F. Beauchere re 23 Provisionally Sealed Response to 11 Motion to Remand and 24 Provisionally Sealed Exhibits by Snap, Inc. (Attachments: # 1 Exhibit List, # 2 Exhibit A − Filed Under Seal, # 3 Exhibit B − Filed Under Seal, # 4 Exhibit C − Screenshots of user answering Know2Protect Lens quiz questions, # 5 Exhibit D − Screenshots of user's Bitmojis dressed using Pledge2Protext Lens, # 6 Exhibit E − Screenshots of Know2Protect and Pledge2Protect advertisements, # 7 Exhibit F − Screenshots of Blue Campaign advertisements)(Hadachek, Timothy) (Entered: 12/23/2025) |
| 12/23/2025 | 28 | DECLARATION of Alec Goldberg) re 23 Provisionally Sealed Opposition to 11 Motion to Remand and 25 Provisionally Sealed Exhibits to 28 Declaration of Alec Goldberg by Snap, Inc. (Attachments: # 1 Exhibit List, # 2 Exhibit A − Screenshots of FDA's the Real Cost video Stories, # 3 Exhibit B − Screenshots of FDA's Next Legends video Stories, # 4 Exhibit C − Several Lenses for The Real Cost, # 5 Exhibit D − Two Next Legends Lenses, # 6 Exhibit E − Filed Under Seal, # 7 Exhibit F − Filed Under Seal, # 8 Exhibit G − Filed Under Seal, # 9 Exhibit H − Snap's Business Services Terms)(Hadachek, Timothy) (Entered: 12/23/2025) |

| | | |
|---|---|---|
| 12/30/2025 | 29 | UNOPPOSED MOTION to Seal or Redact Portions of 23 Opposition to 11 Motion to Remand and 24 / 25 Provisionally Sealed Exhibits to 27 / 28 Declarations by Defendant Snap, Inc. (Attachments: # 1 Exhibit 1) (Fries, Brian) (Entered: 12/30/2025) |
| 01/05/2026 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 29 Unopposed MOTION to Seal or Redact Document(s) 23 PROVISIONALLY SEALED Response to Motion, 24 PROVISIONALLY SEALED Exhibits, 25 PROVISIONALLY SEALED Exhibits. The motion will be resolved by the District Judge. (kf)** (Entered: 01/05/2026) |
| 01/05/2026 | 30 | MOTION to Authorize Jurisdictional Discovery and Stay Briefing on Motion to Remand by Plaintiff Kansas, State of. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Shipp, Paul) (Entered: 01/05/2026) |
| 01/06/2026 | 31 | NOTICE Regarding Plaintiff's Motion to Authorize Jurisdictional Discovery and Stay Briefing on Motion of Remand (Doc. 30 ) by Snap, Inc. (Greim, Edward) (Entered: 01/06/2026) |
| 01/13/2026 | 32 | ORDER. Where Plaintiff neither conferred with Defendant nor sought a pre−motion conference as required by D. Kan. R. 37.1 and 37.2, the Court denies without prejudice 30 Motion for Discovery and 30 Motion to Stay Deadlines. This matter is set for a discovery conference before Magistrate Judge Gwynne E. Birzer on 1/27/2026 at 1:30 p.m. via Zoom. Defendant shall provide a position statement with relevant caselaw regarding both motions, limited to five pages, to the undersigned's chambers by 1/20/2026. Any additional information may be brought before the Court at the hearing. Plaintiff's deadline to reply to the Motion for Remand is suspended until the 1/27/2026 conference. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 1/13/2026. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 01/13/2026) |
| 01/20/2026 | 33 | RESPONSE by Defendant Snap, Inc. re 30 Motion to Authorize Jurisdictional Discovery and Stay Briefing on Motion to Remand, 29 Motion to Seal or Redact. (Greim, Edward) (Entered: 01/20/2026) |
| 01/23/2026 | 34 | JOINT STIPULATION to Jurisdictional Discovery AND MOTION to Modify Briefing Schedule by Plaintiff Kansas, State of. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Shipp, Paul) (Entered: 01/23/2026) |
| 01/27/2026 | 35 | MINUTE ENTRY for proceedings held before Magistrate Judge Gwynne E. Birzer: DISCOVERY HEARING held on 1/27/2026. (Tape #1:30−2:15.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 01/27/2026) |
| 01/27/2026 | 36 | ORDER. The Court held a hearing in this matter. Plaintiff appeared through counsel Brian Barnes, Jack Tucker, and Paul Shipp. Defendant appeared through counsel Edward Greim, Christine Ray, and Rush Atkinson. After discussion the Court grants 34 Joint Motion to Modify Briefing Schedule and set the deadlines as follows. Plaintiff shall serve its requests for production, limited to the topics discussed during the conference, on Defendant by 2/2/2026 and certify same to the Court. The parties shall either submit an agreed Protective Order to the Court by 2/13/2026 or contact the undersigned's chambers to request a conference by the same date. Defendant shall serve its written responses and complete document production by 3/6/2026 certifying the same to the Court. Jurisdictional discovery shall close on 3/27/2026. Plaintiff's reply in support of its Motion for Remand shall be filed by 4/10/2026 and Defendant's sur−reply shall be served no later than 4/24/2026. IT IS SO ORDERED. Signed by |

| | | |
|---|---|---|
| | | Magistrate Judge Gwynne E. Birzer on 1/27/2026. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 01/27/2026) |
| 02/02/2026 | 37 | CERTIFICATE OF SERVICE of Plaintiff's First Set of Requests for Production by Kansas, State of. (Shipp, Paul) (Entered: 02/02/2026) |
| 02/13/2026 | 38 | TRANSCRIPT of Status Conference held January 27th, 2026, before Judge Gwynne E. Birzer, Court Reporter Annie States, 316−315−4334, annie_states@ksd.uscourts.gov. Transcript purchased by: Edward Greim.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 5/14/2026. (as) (Entered: 02/13/2026) |
| 02/13/2026 | 39 | Joint MOTION for Protective Order by Defendant Snap, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit A − Stipulated Protective Order)(Fries, Brian) (Entered: 02/13/2026) |
| 02/23/2026 | 40 | PROTECTIVE ORDER. For good cause shown under Fed. R. Civ. P. 26(c), the court grants the parties' Joint Motion for Protective Order (ECF No. 39 ). Signed by Magistrate Judge Gwynne E. Birzer on 2/23/2026. (mam) (Entered: 02/23/2026) |
| 02/26/2026 | 41 | Unopposed MOTION for Leave to file Updated Redactions to Plaintiff's Petition by Defendant Snap, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Attachments: # 1 Exhibit 1 − Proposed Amended Redactions to Petition, # 2 Exhibit 2 − Declaration of Bonnie Broeren)(Fries, Brian) (Entered: 02/26/2026) |
| 02/27/2026 | 42 | ORDER granting 41 Unopposed Motion for Leave to File Updated Redactions to Plaintiff's Petition. The Updated Redacted Petition shall be filed no later than 3/6/2026. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 2/27/2026. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 02/27/2026) |
| 03/03/2026 | 43 | REDACTION *Updated Petition* by Kansas, State of. (Shipp, Paul) (Entered: 03/03/2026) |
| 03/09/2026 | 44 | CERTIFICATE OF SERVICE of Responses and Objections to Plaintiff's First Set of Requests for Production of Documents by Snap, Inc.. (Fries, Brian) (Entered: 03/09/2026) |
| 04/10/2026 | 45 | SEALED DOCUMENTS titled Attorney General's Reply in Support of Motion to Remand re 11 MOTION to Remand to State Court by Plaintiff Kansas, State of. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18)(Shipp, Paul) Modified on 8/27/2026 to remove |

| | | |
|---|---|---|
| | | provisionally from docket text; documents to remain sealed per 63 order (kgs). (Entered: 04/10/2026) |
| 04/10/2026 | 46 | NOTICE OF PROPOSED SEALED RECORD by Kansas, State of re 45 PROVISIONALLY SEALED Document,, (Shipp, Paul) (Entered: 04/10/2026) |
| 04/16/2026 | 47 | Unopposed MOTION for extension of time *to File Motion for Leave to Seal Documents* by Defendant Snap, Inc. (referred to Magistrate Judge Gwynne E. Birzer) (Fries, Brian) (Entered: 04/16/2026) |
| 04/17/2026 | 48 | ORDER granting 47 Defendant's Unopposed Motion for Extension of Time to File Motion for Leave to Seal Documents. Defendant's deadline to file any Motion for Leave to Seal or Redact regarding the documents at ECF No. 45, including exhibits at 45−1 through 45−18, is extended up to and including 4/22/2026. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 4/17/2026. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 04/17/2026) |
| 04/22/2026 | 49 | ORDER. The Supreme Court recently decided *Chevron USA Inc. v. Plaquemines Parish*, No. 24−813, 2026 WL 1040461 (U.S. Apr. 17, 2026), clarifying the scope of federal−officer removal. The court invites the parties, at their option, to submit supplemental briefing addressing how the Supreme Court's opinion affects plaintiff's pending Motion to Remand (Doc. 11). Supplemental briefs, not to exceed 10 pages, are due no later than May 15, 2026. Signed by District Judge Daniel D. Crabtree on 04/22/2026. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(mig) (Entered: 04/22/2026) |
| 04/22/2026 | 50 | MOTION for Leave to file Plaintiff's Reply in Support of Motion to Remand and Exhibits with Redactions and to File Exhibit 7 Under Seal by Defendant Snap, Inc. (Attachments: # 1 Declaration of L. Rush Atkinson in Support of Defendant's Motion to Seal)(Fries, Brian) (Entered: 04/22/2026) |
| 04/22/2026 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 50 MOTION for Leave to file Plaintiff's Reply in Support of Motion to Remand and Exhibits with Redactions and to File Exhibit 7 Under Seal. The motion will be resolved by the District Judge. (kf)** (Entered: 04/22/2026) |
| 04/24/2026 | 51 | SEALED SURREPLY by Defendant Snap, Inc. re: 11 MOTION to Remand to State Court. (Fries, Brian) Modified on 8/27/2026 to remove provisionally from docket text; document to remain under seal per 63 order (kgs). (Entered: 04/24/2026) |
| 04/24/2026 | 52 | EXHIBIT(S) IN SUPPORT of 51 PROVISIONALLY SEALED Surreply by Defendant Snap, Inc. − *Exhibit 1 to Sur−Reply − Declaration of L. Rush Atkinson* −. (Fries, Brian) (Entered: 04/24/2026) |
| 04/24/2026 | 53 | EXHIBIT(S) IN SUPPORT of 51 PROVISIONALLY SEALED Surreply by Defendant Snap, Inc. *Exhibit 8 [SNAP−KSAG−00002580]*. (Attachments: # 1 Exhibit 10 [SNAP−KSAG−00005451], # 2 Exhibit 11 [SNAP−KSAG−00015124], # 3 Exhibit 12 [SNAP−KSAG−00015128], # 4 Exhibit 15 [SNAP−KSAG−00015132])(Fries, Brian) (Entered: 04/24/2026) |
| 04/24/2026 | 54 | SEALED EXHIBITS *Exhibit 2 [SNAP−KSAG−00014876]* re 51 SEALED Surreply by Defendant Snap, Inc. (Attachments: # 1 Exhibit 3 [SNAP−KSAG−00008695], # 2 Exhibit 4 [SNAP−KSAG−00015556], # 3 Exhibit 5 [SNAP−KSAG−00015617], # 4 Exhibit 6 [SNAP−KSAG−00010103], # 5 Exhibit 7 [SNAP−KSAG−00002220], # 6 |

| | | |
|---|---|---|
| | | Exhibit 9 [SNAP−KSAG−00005419], # 7 Exhibit 13 [SNAP−KSAG−00015098], # 8 Exhibit 14 [SNAP−KSAG−00015102])(Fries, Brian) Modified on 8/27/2026 to remove provisionally from docket text; documents to remain under seal per 63 order (kgs). (Entered: 04/24/2026) |
| 04/24/2026 | 55 | NOTICE OF PROPOSED SEALED RECORD by Snap, Inc. re 51 PROVISIONALLY SEALED Surreply, 54 PROVISIONALLY SEALED Exhibits, (Fries, Brian) (Entered: 04/24/2026) |
| 04/24/2026 | 56 | EXHIBIT(S) IN SUPPORT of 51 PROVISIONALLY SEALED Surreply by Defendant Snap, Inc. *Exhibits 16, 17, 18*. (Attachments: # 1 Exhibit Ex. 17− How the Snap Auction Works, # 2 Exhibit Ex. 18 − Auto Bidding Website)(Josserand, Carrie) (Entered: 04/24/2026) |
| 04/27/2026 | 57 | RESPONSE by Plaintiff Kansas, State of re 50 Motion for Leave, *to redact/seal* (Shipp, Paul) (Entered: 04/27/2026) |
| 05/01/2026 | 58 | MOTION to Seal or Redact Document(s) 51 PROVISIONALLY SEALED Surreply, 54 PROVISIONALLY SEALED Exhibits, by Defendant Snap, Inc. (Fries, Brian) (Entered: 05/01/2026) |
| 05/01/2026 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 58 MOTION to Seal or Redact Document(s) 51 PROVISIONALLY SEALED Surreply, 54 PROVISIONALLY SEALED Exhibits. The motion will be resolved by the District Judge. (kf)** (Entered: 05/01/2026) |
| 05/15/2026 | 59 | SUPPLEMENTAL BRIEF IN OPPOSITION by Defendant Snap, Inc. re 11 Motion to Remand. (Fries, Brian) (Entered: 05/15/2026) |
| 05/15/2026 | 60 | SUPPLEMENTAL BRIEF re 11 Motion to Remand by Plaintiff Kansas, State of. (Shipp, Paul) (Entered: 05/15/2026) |
| 07/15/2026 | 61 | NOTICE OF CHANGE OF ADDRESS by Brian C. Fries (Fries, Brian) (Entered: 07/15/2026) |
| 07/17/2026 | 62 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Jack W. Tucker as to Kansas, State of (Shipp, Paul) (Entered: 07/17/2026) |
| 08/27/2026 | 63 | MEMORANDUM AND ORDER granting 11 Motion to Remand; granting 29 Unopposed Motion to Seal or Redact; granting 50 Motion for Leave to File Under Seal; granting 58 Motion to Seal or Redact. The Court temporarily stays the execution of this remand until further order. The Motions to file under Seal or Redact requested provisionally sealed documents remain under seal and redacted versions be filed in the public record. The motions are granted. Counsel who provisionally filed the documents under seal are directed to file the redacted documents in the public record within seven days of this order using the Redacted Document event. See order for details. Signed by District Judge Daniel D. Crabtree on 8/26/2026. (kgs) (Entered: 08/27/2026) |
| 08/27/2026 | 64 | NOTICE OF APPEAL as to 63 Memorandum and Order by Defendant Snap Inc. Filing fee $ 605, Internet Payment Receipt Number AKSDC−7080978. (Fries, Brian) (Entered: 08/27/2026) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **STATE OF KANSAS, *ex rel.* KRIS W. KOBACH,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SNAP INC.,**<br><br>**Defendant.** | **Case No. 25-4109-DDC-GEB** |

**MEMORANDUM AND ORDER**

Plaintiff State of Kansas, *ex rel.* Kris. W. Kobach, sued defendant Snap Inc.[1] in Kansas state court. The suit alleges that Snap, who operates the social-media platform Snapchat, violated the Kansas Consumer Protection Act by engaging in deceptive and unconscionable practices. Before reaching the merits of this case, the court must resolve a preliminary issue: Does this case, initially filed in state court and asserting just state-law claims, belong in this federal court? Snap removed the case to this court, invoking federal-officer removal. Now before the court is Kansas's Motion to Remand (Doc. 11). The court grants it.

## I. Background

The court must accredit the removing party's plausible factual allegations contained in the Notice of Removal (Doc. 1). *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052, 1061 (2026). The court likewise considers the Petition (Doc. 43), documents attached to the

[1] The docket lists defendant as "Snap, Inc." but the parties' filings refer to defendant as "Snap Inc." The court assumes the latter is accurate and directs the Clerk of Court to update the docket to identify the lone defendant here as "Snap Inc."

Notice of Removal, and other evidence the parties have filed on the docket. *See Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1191 n.1 (10th Cir. 2024); *see also City of Brunswick ex rel. Mayor & Bd. of Comm'rs v. Honeywell Int'l*, 2026 WL 2224648, at *8 n.13 (11th Cir. Aug. 3, 2026) (published) (explaining, in federal-officer removal context, that courts "may consider evidence attached to the removal petition along with post-petition evidence to establish facts relevant to jurisdiction that existed at the time of removal"). The court thus derives the following facts from those sources.

***Petition***

Snap "operates the Snapchat social media platform, which is enormously popular among Kansas teenagers and easily accessible to teens online." Doc. 43 at 2 (Pet. ¶ 1). The Petition asserts harms falling in two buckets.

The first bucket consists of issues involving the ratings Snapchat gives itself on app stores. *Id.* at 3 (Pet. ¶ 2). Snap allegedly misrepresents the prevalence of Snapchat's mature content—including drugs, nudity, alcohol, and profanity. *Id.* at 2 (Pet. ¶ 1). And these misrepresentations result in app stores assigning Snapchat inappropriate age ratings. *See id.* at 3, 10–12 (Pet. ¶¶ 2, 38–45).

The Petition's second bucket of claims arises from Snapchat's allegedly addictive design. Kansas alleges that Snap "knowingly deceives Kansas consumers about the harms its app causes to young users." *Id.* at 3 (Pet. ¶ 3). Snap allegedly has designed Snapchat "to be addictive, especially to children and teens." *Id.* Kansas highlights Snapchat's use of "ephemeral content—content that disappears a short time after it is posted or" viewed—as a driver of addiction. *Id.* The Petition similarly decries the addictive nature of "infinite scrolling, which allows new content to constantly load, giving the appearance of an endless page." *Id.* at 26 (Pet. ¶ 106); *id.*

at 3 (Pet. ¶ 3). Snapchat's "features predictably lead to behavioral addiction among young users and result in harm to their mental and physical health." *Id.* at 4 (Pet. ¶ 5).

Kansas asserts four claims under the Kansas Consumer Protection Act. Two claims are for (1) deceptive and (2) unconscionable acts based on Snapchat's age ratings on app stores. *Id.* at 34–36 (Pet. ¶¶ 137–51). And the other two claims assert (3) deceptive and (4) unconscionable acts based on Snapchat's addictive design. *Id.* at 36–39 (Pet. ¶¶ 152–73). Kansas seeks injunctive relief and civil penalties. *Id.* at 39–40 (Pet.).

***Removal Allegations***

Snap asserts that it's entitled to remove this case based on its work for the United States Department of Homeland Security (DHS) and the United States Food and Drug Administration (FDA). Snap's assertions involve three distinct collaborations that, it argues, qualify for federal-officer removal.

*First*, Snap alleges that it assists DHS with two of its campaigns: Know2Protect, an educational campaign aiming to prevent "online sexual exploitation and abuse" and promote online safety, and Pledge2Protect, a campaign encouraging people "to take action and educate themselves concerning online child exploitation and preventative measures." Doc. 1 at 3 (Notice of Removal ¶ 11). Snap has signed Memoranda of Understanding (MOU) with DHS for both of these campaigns. *Id.* at 4 (Notice of Removal ¶ 13). On behalf of DHS, Snap has conducted "research on young adults' awareness of and familiarity with various risks of child sexual exploitation and abuse online[.]" *Id.* (Notice of Removal ¶ 14).

Snap also asserts that DHS has leveraged "Snapchat's interactive features" to advance its campaigns' goals. *Id.* (Notice of Removal ¶ 15). Specifically, Snap has helped DHS build "custom 'lenses'"—a Snapchat feature that "allow[s] users to add interactive animations to photos and videos"—for its two campaigns. *Id.* Snap did so by connecting "DHS and its

contractor to a longtime production partner to build" the lenses. *Id.* at 5 (Notice of Removal ¶ 18). Meanwhile, Snap and DHS "met intermittently to discuss the campaigns." *Id.* "DHS approved the final content of the Know2Protect lens, which launched in October 2024." *Id.* DHS also advertises on Snapchat to promote Know2Protect. *Id.* at 6 (Notice of Removal ¶ 20). DHS controls "where and how" its advertisements appear in Snapchat. *Id.* And Snap obeys DHS's request by targeting its campaigns to teenage users. *Id.*

*Second*, Snap asserts that it assists with another DHS campaign, Blue Campaign, which aims to prevent human trafficking and educate the public about human trafficking. *Id.* (Notice of Removal ¶ 21). DHS advertised Blue Campaign in Snapchat and dictated the placement of the ads. *Id.* at 6–7 (Notice of Removal ¶ 22).

*Finally*, Snap maintains that it aided the FDA with a public-health campaign. *Id.* at 7 (Notice of Removal ¶ 23). The FDA runs two such campaigns—"The Real Cost" and "Next Legends"—both of which try to educate teenagers about the risks of nicotine and tobacco use. *Id.* (Notice of Removal ¶ 24). Snap helped the FDA build custom lenses featuring interactive animations that give facts about cigarette and vape usage. *Id.* at 8 (Notice of Removal ¶ 25). "Users can create a video of themselves using the lenses, use Snapchat's other interactive features to add effects, animations, and personalization to their video, and then share their video with friends and family." *Id.* Like DHS, the FDA advertises in Snapchat to promote its campaigns. *Id.* (Notice of Removal ¶ 26). It "dictates" "where and how the advertisements" appear in Snapchat. *Id.* Snap, per the FDA's request, targets these advertisements to teenage users. *Id.*

## II. Legal Standard

"Federal courts are courts of limited jurisdiction and, as such, [they] must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

"A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction—here, Snap—bears the burden to show that it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").

"The federal officer removal statute permits removal of a state action that is against 'any person acting under' an officer of the United States 'for or relating to any act under color of such office.'" *Integris Health*, 123 F.4th at 1192 (quoting 28 U.S.C. § 1442(a)(1)). "The statute's purpose is to protect the federal government from 'state-court proceedings that may reflect local prejudice against unpopular federal laws or federal officials.'" *Id.* (quotation cleaned up) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)). Private persons—including private corporations—"'who lawfully assist' federal officers" may invoke § 1442(a)(1), too. *Bd. of Cnty. Comm'rs. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022) (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). To invoke the federal-officer removal statute successfully, our Circuit requires private defendants to show three things: "(1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to the claim or claims." *Id.*; *see also Plaquemines Par.*, 146 S. Ct. at 1057–58 (similar). "Unlike other removal statutes," courts should construe the federal officer removal statute liberally "'to give full effect'" to its purpose. *Suncor Energy*, 25 F.4th at 1251 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

**III. Analysis**

The thrust of Kansas's position contends that Snap wasn't "acting under" a federal officer. As Kansas tells it, no federal officer exercised sufficient control over Snap for it to qualify for removal. The court agrees. Its analysis thus begins and ends with the acting-under prong.

As the Supreme Court has explained, the "words 'acting under' are broad" and "must be 'liberally construed.'" *Watson*, 551 U.S. at 147 (quoting *Symes*, 286 U.S. at 517). "But broad language is not limitless." *Id.* The word "'under' describes a relationship between private entity and federal superior typically involving 'subjection, guidance, or control.'" *Suncor Energy*, 25 F.4th at 1251 (quoting *Watson*, 551 U.S. at 151). "Thus, a 'private person's "acting under" must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" *Id.* (emphases in original) (quoting *Watson*, 551 U.S. at 152). The "scope of the statute does not include simply complying with the law." *Integris Health*, 123 F.4th at 1193 (emphases omitted) (quotation cleaned up). Instead, "there must exist a special relationship between the private firm and the federal superior." *Suncor Energy*, 25 F.4th at 1251 (quotation cleaned up). The private firm must "agree to help carry out the duties or tasks of the federal superior under that superior's strict guidance or control." *Id.* at 1253. The private actor's "closely supervised work must help the government fulfill basic government needs, accomplish key government tasks, or produce essential government products[.]" *Id.*

A "contractor is unlikely to meet the 'acting under' requirement if it sells the government an off-the-shelf commercial product or its relationship with the government is a typical, arms-length business deal." *Gov't of P.R. v. Express Scripts, Inc.*, 119 F.4th 174, 193 (1st Cir. 2024); *City and County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1108 (9th Cir. 2022) (explaining that "a typical commercial relationship" doesn't amount to "close direction"). Our Circuit, too, has

warned against interpreting the statute in a fashion that "would permit removal in countless scenarios where private parties voluntarily engage in certain conduct in exchange for payment." *Integris Health*, 123 F.4th at 1195. Indeed, only "a 'special relationship' between the private firm and the federal superior"—one involving "strict guidance or control"—can satisfy the acting-under requirement. *Suncor Energy*, 25 F.4th at 1251, 53 (quotation cleaned up).

Snap identifies three categories of tasks that, it argues, qualify it as an entity "acting under" a federal officer: (1) the federal agencies advertised on its platform; (2) Snap facilitated the creation of "lenses" for the agencies' campaigns; and (3) Snap delivered research to the DHS. Take each.[2]

### A. Advertising

Consider the advertising argument first. Both DHS and FDA advertised their campaigns on Snapchat. Doc. 1 at 6–7, 8 (Notice of Removal ¶¶ 20, 22, 26). But placing advertisements on a social-media company's platform is hardly the sort of "strict guidance or control" that our Circuit has said will suffice. *Suncor Energy*, 25 F.4th at 1253. Instead, advertising is characteristic of an "arms-length business deal." *Express Scripts*, 119 F.4th at 193. In fact, the FDA, through an agent, placed advertising orders "on Snap's advertising platform"—just as any advertiser would. Doc. 28 at 5 (Goldberg Decl. ¶ 20). By advertising on Snapchat, the FDA agreed to "Snap's Business Services Terms." *Id.* Those very terms disclaim "any agency, partnership, or joint venture between you and Snap." Doc. 28-9 at 11. These facets of Snap's relationship with the FDA—advertisements ordered through ordinary business channels and

[2] Snap argues that it was helping DHS and the FDA discharge statutorily mandated missions. For instance, DHS has a duty to engage with nongovernmental entities to coordinate initiatives for preventing child exploitation. 6 U.S.C. § 473(b)(2). And the FDA has a duty to "conduct[] educational and public information programs relating to" its responsibilities. 21 U.S.C. § 393(d)(2)(D). The court assumes, without deciding, that Snap is correct about this point.

ordinary terms of service—show that the relationship was a standard commercial relationship—and not a "special relationship" involving "close supervision of the private entity[.]" *Suncor Energy*, 25 F.4th at 1253 (quotation cleaned up).

Snap argues that its work for DHS is unlike other customers' because it provides "DHS with significant advertising grants." Doc. 51 at 1 n.2. Snap hasn't explained why this point matters, and it thus has waived the argument. *See, e.g.*, *United States v. Moya*, 5 F.4th 1168, 1192 (10th Cir. 2021) (explaining that litigants waive arguments "when they are inadequately presented" (quotation cleaned up)); *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("This briefing-waiver rule applies equally to arguments that are . . . presented only in a perfunctory manner." (quotation cleaned up)). True enough, giving away its service (for free) to DHS distinguishes Snap's relationship with DHS from an ordinary commercial relationship. But it offers scant support for the notion that DHS exercised stringent oversight. Snap hasn't provided any support for the proposition that giving away goods or services to the federal government can transform an ordinary commercial relationship into one sufficient to satisfy § 1442(a)(1)'s acting-under requirement.

Snap also asserts that the agencies guided Snap by dictating the placement of the ads. Doc. 51 at 6; Doc. 23 at 13–14. But Snap's own exhibits show that any advertiser can control this placement. *See* Doc. 53-3. In other words, placing advertisements is a customary option for an advertiser on Snapchat. It doesn't demonstrate that Snap had a "special relationship" with the federal agencies. *Watson*, 551 U.S. at 157. And selecting among a few pre-curated options for placement, as the federal agencies did here, is a far cry from furnishing "detailed government specifications aimed at satisfying pressing federal needs." *Suncor Energy*, 25 F.4th at 1253.[3]

[3] Snap's Notice of Removal asserts that the "FDA, through its media agents, sends detailed campaign briefs to Snap that outline the agency's campaign goals and objectives." Doc. 1 at 8 (Notice of

In short, the advertising relationships between Snap and the federal agencies bear many of the hallmarks of an ordinary commercial relationship. Neither DHS nor the FDA exercised exacting oversight or delegated legal authority to Snap. So, Snap didn't act under these federal agencies just because it aired their advertisements.

**B. Lens Production**

Next, Snap highlights that it facilitated production of "lenses" for the federal agencies' campaigns. *E.g.*, Doc. 51 at 3–4. Once more, the federal agencies didn't exercise sufficiently strict guidance or control for this activity to satisfy the acting-under prong. As Snap acknowledges, it didn't produce the lenses, for the most part. Instead, it "connected" the federal agencies with third-party firms who created the lenses. Doc. 1 at 5 (Notice of Removal ¶ 18); Doc. 27 at 4 (Beauchere Decl. ¶ 10); Doc. 28 at 3–4 (Goldberg Decl. ¶ 12). So, the federal agencies directed their guidance, if any, to these third-party lens creators—not Snap. Snap responds, arguing that it played an "active role" in the lens development. Doc. 51 at 4. To be sure, Snap's evidence suggests that it interacted with the FDA's marketing agent, opining which lens "options would be most engaging." Doc. 45-10 at 18–22. What's missing, though, is any detailed command from the federal agencies (or their marketing agents) to Snap.[4] And regardless, the record shows that the federal agencies trusted the third-party lens developers and their "creative freedom." Doc. 45-14 at 5, 6. This faith in the lens vendor's vision,

---

Removal ¶ 27). These briefs set out high-level goals for the FDA's campaigns. *See* Doc. 25-1; Doc. 25-2; Doc. 25-3. They don't provide "strict guidance" for realizing those goals. *Suncor Energy*, 25 F.4th at 1253.

[4] Snap highlights an internal email where a Snap employee commented that the FDA's agent had emailed a "pretty detailed" slide deck. Doc. 45-14 at 5. This stray remark doesn't move the needle. The surrounding context of this email makes it clear that the slide deck contained guidance for the "lens vendor"—not Snap. *Id.* at 5, 7. Regardless, a Snap employee's characterization of instruction as "detailed" doesn't mean much, especially when Snap hasn't directed the court to the substance of the slide deck itself to determine whether it qualifies as "detailed.".

unaccompanied by "a high level of detail and specification in the government's demands[,]" is insufficient to satisfy the acting-under requirement. *Czerno v. Gen. Elec. Co.*, 182 F.4th 15, 23 (1st Cir. 2026).

Snap argues that it performed under "the government's specific guidance" because DHS and the FDA approved various steps in the lens-production process. Doc. 51 at 3–4. But this sort of approval is typical of a mine-run commercial relationship. A buyer pays a servicer for a service; the servicer ensures that it furnishes the service to the buyer's liking. Mere process approval, without more, doesn't demonstrate that the federal actors exercised "strict guidance and control" over Snap. *Suncor Energy*, 25 F.4th at 1253. In other words, the government's periodic approvals and meetings with Snap don't amount to "close supervision over the private entity." *Id.* (quotation cleaned up); *see also Montoya v. Bd. of Cnty. Comm'rs*, 2026 WL 811569, at *10 (D.N.M. Mar. 24, 2026) (holding that government's "discretionary and generally-framed auditing authority" under contract was insufficient to satisfy private actor's acting-under status). So, Snap's involvement in producing lenses for the agencies doesn't qualify it as "acting under" them.

### C. Research

The closest Snap comes to satisfying the acting-under prong is its argument that it performed research for DHS. Under its MOUs with DHS, Snap agreed to "[r]efin[e], conduct[], and mak[e] available one final tranche of research about teens' and young adults' awareness of, and familiarity with, a variety of sexual-related online risks[.]" Doc. 24-2 at 3; *see also* Doc. 24-1 at 3 (similar). That statement is essentially all the detail the MOUs contain about Snap's agreement to produce this research. Where, as here, a contract defines "the defendant's duties in general terms and the contractor was the one who decided how to fulfill those duties[,]" the "arrangement does not rise to the level of 'acting under.'" *Sunoco*, 39 F.4th at 1110 (quotation

cleaned up); *see also Montoya*, 2026 WL 811569, at *11 (holding that "agreements to assist in the performance of a governmental task" without "strict governmental oversight and supervision" are insufficient to come "within the purview of § 1442(a)(1)").

The MOUs here fall well short of offering the detailed guidance necessary to satisfy the acting-under prong. Consider, for contrast, *Bennett v. MIS Corp.*. There, the Sixth Circuit upheld federal-officer removal after the FAA had hired defendant to perform mold remediation. 607 F.3d 1076 (6th Cir. 2010). The contracts there "included precise specifications." *Id.* at 1087. Among other details, the contracts required defendant to "establish a work area perimeter," use "6-mil plastic sheeting," equip scrubber machines with high-efficiency particulate air filters, and dispose of mold according to contractually specified procedures. *Id.* The contracts also set out protocols for federal officers to supervise defendant's work. *Id.* This set of circumstances, the Sixth Circuit explained, involved an "unusually close" relationship "involving detailed regulation, monitoring, and supervision." *Id.* at 1088 (quotation cleaned up). It thus satisfied the acting-under prong for federal-officer removal. *Id.*

The legal instruments connecting Snap to DHS and the FDA look nothing like the contracts in *Bennett*. The Snap contract's one-sentence reference to research contains nearly zero detail. It doesn't dictate how Snap should conduct research, what "sexual-related online risks" it should consider, or when or in what format it should return the research. What's more, the MOUs expressly disclaimed creating "any legal obligation on the part of either party." Doc. 24-1 at 5; Doc. 24-2 at 6. Instead, the MOUs declare that they are "strictly for internal management purposes for each of the Parties." Doc. 24-1 at 5; Doc. 24-2 at 6. Such overt disclaimers of legal effect are strong indicators that DHS didn't delegate any authority to Snap.

As the Supreme Court has explained, federal agencies don't "normally delegate legal authority to private entities without saying that they are doing so." *Watson*, 551 U.S. at 157.

Snap cites an email exchange where DHS gave some line-item edits to proposed research questions. *See* Doc. 45-6 at 4; Doc. 45-7. But the context of these emails suggest that it was Snap, not DHS, running the show. The parties' communications show that Snap was deciding when it would send the questions and to whom it would send them. Doc. 45-6 at 4. And Snap came up with the initial questions. *Id.* What's more, DHS's edits to the questions weren't nearly as "detailed" as Snap's argument contends. Doc. 51 at 5. Instead, they largely consisted of modest wording changes such as swapping out "more" for "additional" or "did you like" for "caught your attention." Doc. 45-7 at 2. Even the more involved comments are akin to those made by a run-of-the-mill editor, not a regulator. *Id.* at 3 (suggesting that the author might get the same answer from another question or that the author should "[b]e more specific"). This mundane back and forth reveals anything but "strict guidance and control." *Suncor Energy*, 25 F.4th at 1253.

No doubt, Snap performed some services for federal officers. Some of those services—like advertising on Snapchat—reflect no more than a standard arms-length commercial transaction. Other services, like lens production and custom research, didn't involve a federal officer's "strict guidance or control" over Snap. *Id.* at 1253. Snap thus has failed to identify any conduct that qualifies it as acting under a federal officer. In turn, Snap has failed to justify this federal court's exercise of jurisdiction. So, the court grants Kansas's Motion to Remand (Doc. 11).[5]

[5] The court recognizes that the Northern District of Florida reached a different result on an essentially identical motion. *See Off. of Att'y Gen. v. Snap Inc.*, 2025 WL 4035005 (N.D. Fla. Aug. 13, 2025), *appeal docketed*, No. 25-12814 (11th Cir. Aug. 18, 2025). The court respectfully disagrees with that case's analysis, which suggests that Snap needn't show a close or extensive relationship with the

## IV. Next Steps

Because the court grants Kansas's motion to remand, the court must look ahead with a practical eye to the next steps in this case. Rule 62 provides that "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise." Fed. R. Civ. P. 62(a). This Order qualifies as a "judgment" as the Federal Rules define that term because it's an appealable order. *See* Fed. R. Civ. P. 54(a) (defining "judgment" to "include[] a decree and any order from which an appeal lies"); 28 U.S.C. § 1447(d) (authorizing review of remand order if the case "was removed pursuant to section 1442"). Rule 62 thus mandates an automatic 30-day stay on this Order. *See Kansas v. Pfizer, Inc.*, 2025 WL 1548507, at *2–3 (D. Kan. May 30, 2025). Consistent with Rule 62, the court directs the Clerk of Court to withhold mailing this Order to the Washington County, Kansas Court until further order.[6]

## V. Conclusion

Snap has failed to carry its burden to show that the court has jurisdiction over this action. The court thus grants Kansas's Motion to Remand (Doc. 11) but stays execution of this remand until further Order.

---

federal government to satisfy the acting-under prong. *Id.* at *3–4. That conclusion isn't tenable under Tenth Circuit law, which requires "strict guidance or control" and "close supervision of the private entity by the government[.]" *Suncor Energy*, 25 F.4th at 1253 (quotation cleaned up).

[6] Anticipating that Snap may file a motion to stay execution of this Order pending appeal, this footnote adopts an expedited briefing schedule to govern such a potential motion. If Snap wishes to file a motion to stay execution of this Order pending appeal, it is due within 14 days of this Order. If Kansas opposes such a motion, its response is due 10 days after Snap files its opening brief. Any reply is due 7 days after Kansas files its response. The parties' principal briefs may not exceed 10 pages. Any reply may not exceed 5 pages. The parties' briefs should address the burgeoning Circuit split about whether an appeal automatically stays execution of a remand order. *Compare City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265 (4th Cir. 2025), *and City of Brunswick*, 2026 WL 2224648, at *3–7, *with California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763 (9th Cir. 2025); *see also Utah v. Express Scripts*, No. 26-4035 (10th Cir. Apr. 2, 2026) (pending Tenth Circuit appeal on this issue).

As a final matter, the court grants Snap's pending motions to seal and redact. Doc. 29; Doc. 50; Doc. 58. For those documents for which Snap has requested redactions, Snap should file those documents—in the public record, with redactions—within seven days of this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff State of Kansas's Motion to Remand (Doc. 11) is granted. The court temporarily stays the execution of this remand until further Order. For now, the court directs the Clerk of Court to refrain from mailing a copy of this Order to the Washington County, Kansas Court.

**IT IS FURTHER ORDERED THAT** defendant Snap Inc.'s Motion to Seal or Redact (Doc. 29) is granted. The court directs the Clerk to seal Doc. 23; Doc. 24-1; Doc. 24-2; Doc. 25-1; Doc. 25-2; and Doc. 25-3 permanently. The court directs the Clerk to unseal Doc. 24 and Doc. 25. And the court directs Snap to file redacted versions of Doc. 23, Doc. 24-1, and Doc. 24-2 on this case's docket within seven days of this Order.

**IT IS FURTHER ORDERED THAT** defendant Snap Inc.'s Motion to Redact (Doc. 50) is granted. The court directs the Clerk to seal Doc. 45; Doc. 45-1; Doc. 45-2; Doc. 45-3; Doc. 45-4; Doc. 45-5; Doc. 45-6; Doc. 45-7; Doc. 45-8; Doc. 45-9; Doc. 45-10; Doc. 45-11; Doc. 45-12; Doc. 45-13; Doc. 45-14; Doc. 45-15; Doc. 45-15; Doc. 45-16; Doc. 45-17; and Doc. 45-18 permanently. And the court directs Snap to file redacted versions of Doc. 45; Doc. 45-1; Doc. 45-2; Doc. 45-3; Doc. 45-4; Doc. 45-5; Doc. 45-6; Doc. 45-8; Doc. 45-9; Doc. 45-10; Doc. 45-11; Doc. 45-12; Doc. 45-13; Doc. 45-14; Doc. 45-15; Doc. 45-16; Doc. 45-17; and Doc. 45-18 on this case's docket within seven days of this Order.

**IT IS FURTHER ORDERED THAT** defendant Snap Inc.'s Motion to Redact and Seal (Doc. 58) is granted. The court directs the Clerk to seal Doc. 51; Doc. 54; Doc. 54-1; Doc. 54-2; Doc. 54-3; Doc. 54-4; Doc. 54-5; Doc. 54-6; Doc. 54-7; and Doc. 54-8 permanently. And the

court directs Snap to file the redacted versions of Doc. 51; Doc. 54; Doc. 54-1; Doc. 54-2; Doc. 54-5; Doc. 54-6; Doc. 54-7; and Doc. 54-8 on this case's docket within seven days of this Order.

**IT IS FURTHER ORDERED THAT** the Clerk of Court update the docket to list defendant as "Snap Inc."—not "Snap, Inc."

**IT IS SO ORDERED.**

**Dated this 26th day of August, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| STATE OF KANSAS, *ex rel.* KRIS W. KOBACH, Attorney General,<br><br>Plaintiff,<br><br>v.<br><br>SNAP INC.,<br><br>Defendant. | Case No. 5:25-cv-04109-DDC-GEB |

**NOTICE OF APPEAL**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1447(d), Defendant Snap Inc. hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Memorandum and Order entered by United States District Judge Daniel D. Crabtree of this Court on August 27, 2026 [Dkt. 63].

DATED: August 27, 2026

Respectfully Submitted,

*/s/ Brian C. Fries*
Brian C. Fries (KS #15889)
Carrie E. Josserand (KS #18893)
LATHROP GPM LLP
2323 Grand Boulevard, Suite 800
Kansas City, MO 64108
Tel: (816) 292-2000
brian.fries@lathropgpm.com
carrie.josserand@lathropgpm.com

Edward D. Greim (KS #21077)
Paul E. Brothers (KS #26863)
Matthew R. Mueller (KS #28499)
Katherine E. Mitra (KS #79151)
GRAVES GARRETT GREIM LLP
110 Main Street, Suite 2700
Kansas City, MO 64105
Tel: (816) 256-3181
edgreim@gravesgarrett.com
pbrothers@gravesgarrett.com
mmueller@gravesgarrett.com
kmitra@gravesgarrett.com

Jeannie S. Rhee (*admitted pro hac vice*)
L. Rush Atkinson (*admitted pro hac vice*)
Kyle Smith (*admitted pro hac vice*)
Elizabeth N. Brandt (*admitted pro hac vice*)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, D.C. 20004-2637
Tel: (202) 240-2900
jrhee@dirllp.com
ratkinson@dirllp.com
ksmith@dirllp.com
ebrandt@dirllp.com

Christine M. Ray (*admitted pro hac vice*)
DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10007
Tel: (212) 470-1306
cray@dirllp.com

*Attorneys for Defendant Snap Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2026, a copy of the foregoing document was served via the Court's electronic filing system, and by Electronic Mail, on all counsel of record.

*/s/ Brian C. Fries*
Brian C. Fries
An Attorney for Defendant