**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| STATE OF KANSAS, *ex rel.* KRIS W. KOBACH, Attorney General,<br><br>Plaintiff,<br><br>v.<br><br>SNAP INC.,<br><br>Defendant. | Case No. 5:25-cv-04109-DDC-GEB |

**DEFENDANT SNAP INC.'S MOTION TO STAY**
**EXECUTION OF REMAND ORDER PENDING APPEAL**

Defendant Snap Inc. ("Snap") respectfully files this Motion (the "Motion") to stay execution of the remand order, Dkt. No. 63 (the "Remand Order"), pending Snap's appeal.

Snap's notice of appeal automatically imposes a stay that prevents this Court from returning jurisdiction to state court. A notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The Supreme Court has recognized that when the question on appeal is whether a case belongs in district court, "the entire case is essentially involved in the appeal" and no further proceedings may occur while the appeal is pending. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023) (internal quotation marks and citation omitted). As this Court and two federal appellate courts have previously recognized, that logic applies in federal officer removal appeals. *See Kansas v. Pfizer, Inc.*, 2025 WL 1548507, at *1 (D. Kan. May 30, 2025); *City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 270 (4th Cir. 2025); *City of Brunswick ex rel. Mayor & Bd. of Comm'rs v. Honeywell Int'l, Inc.*, 184 F.4th 1230, 1240–41 (11th Cir. 2026). The "question on appeal" here is whether the case was properly removed. *Coinbase*, 599 U.S. at 741. Thus, under *Griggs* and *Coinbase*, this Court cannot carry out a remand while the appeal is pending.

Even absent an automatic stay, the equities warrant a stay. Snap has a sufficient likelihood of success, particularly given that its appeal raises significant and complex issues of federal jurisdiction that have already provoked disagreement among federal district courts. Moreover, a stay would promote the purpose behind the federal officer removal statute and protect Snap from the irreparable harm of proceeding with litigation in two forums.

For these reasons, Snap's Motion should be granted.[1]

[1] In filing this Motion, Snap does not waive any right, defense, affirmative defense, or objection, including any challenges to venue and/or the exercise of personal jurisdiction.

## BACKGROUND

Plaintiff filed a Petition against Snap in Kansas state court, alleging that Snap violated the Kansas Consumer Protection Act—targeting certain of the Snapchat platform's features as well as certain representations made in relation to the platform's age ratings in mobile application stores and the prevalence of allegedly age-inappropriate content available on the platform. Snap removed, invoking this Court's jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and arguing that Snap was acting under the Department of Homeland Security ("DHS") and the U.S. Food and Drug Administration ("FDA") in assisting the agencies with their statutory public education duties. Dkt. No. 1. Plaintiff filed a motion to remand, Dkt. No. 11, which this Court granted on August 27, 2026, *see* Remand Order. On the same day, Snap filed its notice of appeal pursuant to 28 U.S.C. § 1447(d). Dkt. No. 64.

## ARGUMENT

### I. Snap's Appeal Automatically Stays the Court's Remand Order

Snap's notice of appeal automatically stays this Court's Remand Order under *Coinbase*. Citing *Coinbase*, this Court has recognized a federal officer remand order is automatically stayed pending appeal. *Pfizer*, 2025 WL 1548507, at *1. Two circuits agree, and this Court should continue to follow their persuasive reasoning.

*Coinbase* built on the Supreme Court's decision in *Griggs*, which held that the "filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." 459 U.S. at 58. The *Griggs* principle "requires an automatic stay of district court proceedings that relate to *any aspect of the case* involved in the appeal." *Coinbase*, 599 U.S. at 744 (emphasis added).

The Supreme Court applied this principle in *Coinbase* to hold that an appeal of an order refusing to compel arbitration results in an automatic stay. As the Supreme Court explained, "[b]ecause the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal,'" and all district court proceedings are automatically stayed while the appeal is pending. 599 U.S. at 741 (quoting *Griggs*, 459 U.S. at 58). In these circumstances, an automatic stay avoids "the worst possible outcome for parties and the courts": subjecting a party to interim litigation in the district court, "only for the court of appeals to reverse and order the dispute" to proceed in arbitration. *Id.* at 743 (internal quotation marks and citation omitted). An automatic stay also preserves "Congress's decision . . . to afford a right to an interlocutory appeal," which would otherwise "be largely nullified." *Id.*

The Fourth and the Eleventh Circuits agree that *Coinbase*'s reasoning applies "just as forcefully" in the context of a federal officer removal appeal. *City of Martinsville*, 128 F.4th at 270; *accord City of Brunswick*, 184 F.4th at 1240–41. This Court has previously reached the same conclusion, *Pfizer*, 2025 WL 1548507, at *3, and it should do so again here.

In both the arbitration and removal contexts, "the question on appeal . . . is 'whether the litigation may go forward in the district court,'" so "the entire case is essentially 'involved in the appeal.'" *City of Martinsville*, 128 F.4th at 269–70 (quoting *Coinbase*, 599 U.S. at 741); *accord City of Brunswick*, 184 F.4th at 1239–40. The district court therefore "los[es] jurisdiction to transmit a remand order once [the] defendant file[s] its notice of appeal." *Pfizer*, 2025 WL 1548507, at *3; *see also Canadian Breaks LLC v. JPMorgan Chase Bank, N.A.*, 2026 WL 1164691, at *3 (N.D. Tex. Apr. 29, 2026).

There is no basis for limiting *Coinbase* to the arbitration context. To the contrary, the Supreme Court expressly stated in *Coinbase* that it was not creating "a special, arbitration-

preferring procedural rule." 599 U.S. at 746. The Court instead grounded its analysis in the generally applicable "*Griggs* principle," which is "a longstanding tenet of American procedure." *Id.* at 740–41; *see* 16A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3949.1 (5th ed. Apr. 2026) ("The key point is that once jurisdiction passes to the court of appeals, the district court generally lacks power to act with respect to matters encompassed within the appeal, and actions taken by the district court in violation of this principle are null and void.").[2]

As the Supreme Court explained in *Coinbase*, the *Griggs* principle is a well-established "background" principle of civil procedure. 599 U.S. at 743–44. When Congress seeks to override that principle, it does so expressly. *See id.* at 744 & n.6 (collecting examples). Neither the federal arbitration statute nor the federal officer removal statute overrides *Griggs*. *See City of Brunswick*, 184 F.4th at 1240 (there is "no express 'non-stay' language" in either statute). Thus, the "background" *Griggs* principle continues to apply, and it requires an automatic stay of district court proceedings in the context of federal officer removal. *City of Martinsville*, 128 F.4th at 270. If anything, the removal statutory scheme even more clearly conveys Congress's intent not to allow proceedings to resume while a civil appeal is pending. Although Congress expressly permitted *criminal* prosecutions to move forward in state court while remand issues are litigated, *see* 28 U.S.C. § 1455(b)(3), there is no similar provision for civil matters like this one.

As in the arbitration context, Congress's decision to grant interlocutory review of federal officer removal remand orders reinforces the *Griggs* principle. *See Coinbase*, 599 U.S. at 743–44. Allowing the remand to proceed while the appeal is pending "would undercut the entire point of the appeal." *City of Martinsville*, 128 F.4th at 269. Indeed, failing to apply a stay would expose

[2] The Supreme Court relied on Wright & Miller's "endorse[ment] [of] the automatic stay requirement in arbitration cases" in *Coinbase*, 599 U.S. at 742, and that treatise has subsequently been updated to reflect *Coinbase*'s holding—without limitation to the arbitration context.

federal officers to the very problem that Congress sought to avoid: "interference by hostile state courts." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969). During a remand while appellate proceedings are ongoing, a state court might for example erroneously compel sensitive or privileged discovery that could not be clawed back or even enter an injunction that directly interferes with federal operations. As the Eleventh Circuit recognized in *City of Brunswick*, allowing remand proceedings to occur "demonstrate[s] the very real possibility of undermining appellate review in federal officer removal cases absent an automatic stay." 184 F.4th at 1240.

Beyond nonprecedential summary orders, the Ninth Circuit is the only appellate court to refuse to apply *Coinbase*'s logic in the federal officer removal context. *See California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 767 (9th Cir. 2025). But that analysis is incompatible with *Coinbase*. In *Express Scripts*, the Ninth Circuit read *Coinbase* as narrowly addressing the arbitration context, *see id.* at 768, while ignoring the Supreme Court's express statement that its decision should not be interpreted as a "special" rule for arbitration, *Coinbase*, 599 U.S. at 746. The Ninth Circuit also relied on "[f]ederalism concerns—namely the limited jurisdiction of federal courts and the need to respect the jurisdiction of state courts"—to "distinguish federal officer removal from the arbitration context." *Express Scripts*, 139 F.4th at 768. But a case belongs in state court only if the federal district court correctly determined that the case should be remanded; if the appellate court reverses, the case properly belongs in federal court. Moreover, Congress already weighed the "federalism concerns" here by creating a right to an immediate appeal—unlike in most other remand contexts, where no appeal is allowed. *See* § 1447(d). As the Supreme Court has recognized, "Congress has deemed it appropriate to allow appellate review *before* a district court may remand a case to state court." *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 236 (2021) (emphasis added). The Ninth Circuit

incorrectly privileged "free-floating federalism concern[s]" over Congress's express intent—reflected in the text of § 1447—to allow a federal appellate court to weigh in before a case returns to state court. *City of Brunswick*, 184 F.4th at 1241 n.9.

The Ninth Circuit also concluded that an automatic stay is unwarranted because "the question on appeal [following remand] is essentially a narrow venue question of whether the case belongs in state or federal court." *Express Scripts*, 139 F.4th at 771. That reasoning is directly contrary to *Coinbase*, which rejected the contention "that questions of arbitrability are severable from the merits" where "the district court's authority to consider a case is involved in the appeal." 599 U.S. at 747 (internal quotation marks and citation omitted). The Ninth Circuit instead echoes Justice Jackson's dissent in *Coinbase*. *See id.* at 755–56 (Jackson, J., dissenting). This Court should follow the majority in *Coinbase*, not the dissent.

Snap filed a timely notice of appeal the same day this Court entered its Remand Order, and this Court has not mailed the certified copy of the order required for the state court to resume jurisdiction. *See* Remand Order at 13; § 1447(c). Under *Coinbase* and *Griggs*, the case is on appeal, and the Court has no jurisdiction to mail the Remand Order. *Pfizer*, 2025 WL 1548507, at *3. The state court similarly may not resume proceedings until the appeal has concluded and this Court's Remand Order has been mailed. *See* § 1447(c). Indeed, any actions taken by the state court while the appeal is pending would be "void *ab initio*." *City of Brunswick*, 184 F.4th at 1243 (citation omitted). Although no order is necessary to implement a stay under *Coinbase* and *Griggs*, *see City of Martinsville*, 128 F.4th at 272 n.6, this Court can and should issue an order recognizing that an automatic stay is in place, *see, e.g.*, *Pfizer*, 2025 WL 1548507, at *3–4.

## II. The Traditional Stay Factors Support a Stay Pending Appeal

Courts consider four traditional factors in determining whether to grant a motion to stay

pending appeal: "(1) the likelihood of success on appeal; (2) the threat of irreparable harm if the stay or injunction is not granted; (3) the absence of harm to opposing parties if the stay or injunction is granted; and (4) any risk of harm to the public interest." *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003). When, as here, "the Government is the opposing party," the latter two stay factors "merge" and are considered as one. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Each of these factors weighs in favor of a stay in this case.

**A. Snap Is Sufficiently Likely To Succeed on Appeal**

Because, as described below, the harm factors "tip decidedly" in favor of a stay, the likelihood of success factor is "somewhat relaxed." *Mainstream Mktg.*, 345 F.3d at 852. A sufficient probability of success is therefore established if Snap shows that it has raised "questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Id.* at 852–53 (citation omitted). This case presents complex issues of federal jurisdiction in a developing legal landscape that warrant serious consideration. These issues are far from settled. As the Court recognized, another federal district court denied a motion to remand in a case brought by the Florida Attorney General against Snap, demonstrating that there is room for disagreement on whether removal is proper and Snap is sufficiently likely to succeed on appeal. *See Off. of Att'y Gen. v. Snap Inc.*, 2025 WL 4035005 (N.D. Fla. Aug. 13, 2025), *appeal docketed*, No. 25-12814 (11th Cir. Aug. 18, 2025).

Under any standard, however, Snap has shown a sufficient likelihood of success concerning the proper application of the federal officer removal test's "acting under" requirement. Snap respectfully maintains, for example, that the Court erred in holding that Snap was not acting under DHS and the FDA because the services Snap provides to those agencies share similarities with services it provides to non-governmental clients. *See* Remand Order at 7–8, 12. As an initial



83460776v1

matter, Snap disagrees with the Court's assessment that its work with DHS and the FDA does not exceed that of an ordinary commercial relationship. *E.g.*, Dkt. No. 51 ("Snap's Sur-reply") at 1 n.2. In any event, the law does not require that a removing defendant provide services available to the government alone. Rather, the broad "acting under" requirement is met when a private entity assists or helps carry out a federal officer's tasks pursuant to the agency's "subjection, guidance, or control." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022). Snap meets this requirement because it tailors its services for DHS and the FDA to the agencies' needs and specifications. *See id.* at 1253. It makes no difference whether Snap's other clients receive services tailored to their needs (not the government's). Indeed, one court recently held that removal was warranted based on a company making products for the government, even though the company also made those products for other clients. *Town of Pine Hill v. 3M Co.*, 2026 WL 2589473, at *1–2 (11th Cir. Sept. 2, 2026); *see also Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 257 (4th Cir. 2021) (removal authorized based on claimed harm from "every opioid prescription" filled, not just those arising from a government contract). These are important issues for the Tenth Circuit to resolve on appeal.

Moreover, contrary to the Supreme Court's recent decision in *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026), the Remand Order (at 10–11) places improper emphasis on the contracts governing Snap's relationships with DHS and the FDA. This ignores *Plaquemines*'s instruction that a government contract need not specify the conduct giving rise to the suit. 146 S. Ct. at 1062. There is no requirement that the government's guidance be conveyed through a written contract, and the record shows several examples of extra-contractual instruction and guidance by DHS and the FDA. *See, e.g.*, Snap's Sur-reply Exs. 4, 6, 7, 13, 14.[3]

---

[3] Snap also disagrees with the characterization of the agreements at issue as lacking sufficient detail. Remand Order at 10. For example, the Memoranda of Understanding that govern Snap's relationship with DHS for certain

For these reasons and all those articulated in Snap's briefing on the motion to remand, Snap is likely to prevail on appeal and should be afforded a meaningful opportunity for review.

**B. Snap Will Suffer Irreparable Harm Absent a Stay**

Snap will suffer irreparable harm if "forced to spend resources litigating in state court while simultaneously waiting for the Tenth Circuit to decide whether the case should reside in federal court." *Bank of Am., N.A. v. El Paso Nat. Gas Co.*, 2017 WL 9478457, at *2 (W.D. Okla. Jan. 12, 2017). The likelihood of irreparable harm stems not only from the burden and expense of simultaneous litigation in separate forums but also from "the potential of inconsistent outcomes if the state court rules on any motions while the appeal is pending." *Id.* (quoting *Dalton v. Walgreen Co.*, 2013 WL 2367837, at *2 (E.D. Mo. May 29, 2013)); *Lax v. APP of N.M. Ed, PLLC*, 2022 WL 1115221, at *2 (D.N.M. Apr. 14, 2022). Denying the Motion would thus create a significant and unnecessary risk of confusion and issues of comity if Snap were successful on appeal. *See Delaware ex rel. Jennings v. BP Am. Inc.*, 2022 WL 605822, at *3 (D. Del. Feb. 8, 2022).

Moreover, Congress was explicit in providing parties with the opportunity to appeal the remand of a case to state court where that case was removed on federal officer removal grounds. § 1447(d). Allowing the case to proceed in state court while a party is exercising its right of appeal would eviscerate the right that Congress created. *See BP Am.*, 2022 WL 605822, at *3 (remanding case pending appeal "would defeat the very purpose of permitting an appeal and leave a defendant who prevails on appeal holding an empty bag" (internal quotation marks and citation omitted)); *Plaquemines Par. v. Riverwood Prod. Co.*, 2022 WL 843118, at *3 (E.D. La. Mar. 22, 2022); *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 2016 WL 3346349, at *4 (E.D. Va.

---

campaigns outline Snap's commitment to DHS through specific actions, and Snap's fulfillment of its commitments is well documented. Any suggestion that additional or more specific contractual terms were necessary is inconsistent with *Plaquemines*.

June 16, 2016). It would also be inconsistent with the purpose of the broad federal officer removal statute, which is to provide federal officers and those acting under the officers the opportunity to have claims against them considered in a federal forum. *See Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 295–96 (5th Cir. 2017) ("Our unusual ability to review a remand order in [the Section 1442] context reflects the importance Congress placed on providing federal jurisdiction for claims asserted against federal officers and parties acting pursuant to the orders of a federal officer." (citation omitted; alteration in original)); *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150–51 (2007).

**C. The Equities Favor a Stay**

A stay would not prejudice Plaintiff, as any stay would be temporary and would not deprive Plaintiff of a state forum should the Tenth Circuit determine that is the proper venue. *See, e.g.*, *Northrop*, 2016 WL 3346349, at *4. Nor would a stay alter the potential relief ultimately available to Plaintiff. Any "public interest in swift resolution" of Plaintiff's underlying claims is "overshadowed by the rat's nest of comity and federalism issues" and "potential for nightmarish procedural complications" arising from parallel proceedings. *Id.* In fact, a stay would *benefit* the public interest by avoiding the undue expense of simultaneous litigation and preserving public and judicial resources. *E.g.*, *BP Am.*, 2022 WL 605822, at *3; *Lax*, 2022 WL 1115221, at *2.

## CONCLUSION

For these reasons, this Court should stay execution of its Remand Order pending appeal. Alternatively, Snap respectfully requests that the Court refrain from sending the Remand Order to the state court pursuant to 28 U.S.C. § 1447(c), until the Tenth Circuit rules on Snap's stay motion. Snap will file such a motion (if necessary) within 14 days of this Court's order.

Respectfully Submitted,

DATED: September 10, 2026

By: /s/ *Brian C. Fries*

Brian C. Fries (KS #15889)
Carrie E. Josserand (KS #18893)
Timothy J. Hadachek (KSD #79038)
LATHROP GPM LLP
2323 Grand Boulevard, Suite 800
Kansas City, MO 64108
Tel: (816) 292-2000
brian.fries@lathropgpm.com
carrie.josserand@lathropgpm.com
timothy.hadacheck@lathropgpm.com

Edward D. Greim (KS #21077)
Paul E. Brothers (KS #26863)
Matthew R. Mueller (KS #28499)
Katherine E. Mitra (KS #79151)
GRAVES GARRETT GREIM LLP
1100 Main Street, Suite 2700
Kansas City, MO 64105
Tel: (816) 256-3181
edgreim@gravesgarrett.com
pbrothers@gravesgarrett.com
mmueller@gravesgarrett.com
kmitra@gravesgarrett.com

Jeannie S. Rhee (*admitted pro hac vice*)
L. Rush Atkinson (*admitted pro hac vice*)
Kyle Smith (*admitted pro hac vice*)
Elizabeth N. Brandt (*admitted pro hac vice*)
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, D.C. 20004-2637
Tel: (202) 240-2900
jrhee@dirllp.com
ratkinson@dirllp.com
ksmith@dirllp.com
ebrandt@dirllp.com

Christine M. Ray (*admitted pro hac vice*)
DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10007
Tel: (212) 470-1306
cray@dirllp.com

*Attorneys for Defendant Snap Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2026, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Brian C. Fries*
Brian C. Fries
An Attorney for Defendant