**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **STATE OF KANSAS, *ex rel.* KRIS W. KOBACH, Attorney General,** | ) | |
| **Plaintiff(s),** | ) | |
| | ) | **Case No. 5:25-CV-04109-DDC-GEB** |
| **v.** | ) | |
| **SNAP INC.,** | ) | |
| **Defendant(s).** | ) | |

**<u>OPPOSITION TO SNAP INC.'S MOTION TO STAY</u>**

This Court correctly decided that Snap's minimal advertising agreements with the Department of Homeland Security (DHS) and the U.S. Food and Drug Administration (FDA) did not transform Snap into a federal officer. Therefore, Snap was not entitled to removal to federal court under 28 U.S.C. § 1442(a)(1). *See* Mem. & Order, Doc. 63 at 12 (Aug. 27, 2026) ("Op."). So this Court ordered that the case be remanded to Kansas state court. Snap has appealed that order and moved this Court for a stay pending appeal.

This Court should deny the motion for a stay. Snap has not carried its burden to show that a stay is warranted here. First, Snap is unlikely to prevail on the merits of its appeal. Its arms-length commercial dealings with DHS and the FDA do not satisfy the Tenth Circuit's requirements that the federal government exercise "strict guidance or control" over a federal officer's actions. Second, Snap does not claim any imminent irreparable harm. Speculative risk and monetary damages are not sufficiently irreparable to require a stay. And finally, the balance of equities strongly favors avoiding delay in determining whether Snap made misrepresentations that harmed Kansas children and parents in violation of Kansas's Consumer Protection Act.

Unable to meet the standards for a stay under ordinary circumstances, Snap argues that it is entitled to an automatic stay pending appeal under the federal officer removal statute given the Supreme Court's arbitration decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023). The Ninth Circuit has explicitly rejected this argument in a published opinion, and eight other circuits have taken a similar view. While this Court previously considered itself bound by an automatic stay in *Pfizer*—in part because only a handful of jurisdictions had considered the issue— there is no need for it to continue to do so. Indeed, the Tenth Circuit has denied stays for federal officer removal claims after *Coinbase* (although it has not addressed *Coinbase* directly). The Court is not bound by a minority position but should instead apply the ordinary stay factors.

## ARGUMENT

### I. The Stay Factors Counsel Against a Stay.

A stay is "an exercise of judicial discretion," which depends "upon the circumstances of the particular case." *Va. R.R. Co. v. United States*, 272 U.S. 658, 672–73 (1926). Courts consider four factors when deciding to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). This test has "substantial overlap" with the "factors governing preliminary injunctions," and the requesting party "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.*

Snap cites a pre-*Nken* case to argue that its burden on the likelihood of success factor can be "somewhat relaxed." Mot., Doc. 72 at 7 (Sep. 10, 2026) (quoting *FTC v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003)). However, the Tenth Circuit's rejection of that same "somewhat relaxed" test in the preliminary injunction context casts serious doubt on that claim. Previously, the Tenth Circuit applied the "somewhat relaxed" test to motions for preliminary injunction, including in *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234 (10th Cir. 2001), on which Snap's primary authority, *Mainstream Mktg.*, relies. 345 F.3d at 852. In *Dine Citizens Against Ruining Our Env't v. Jewell*, the court explained that courts "impermissibly deviate[] from the Supreme Court's 'frequently reiterated standard'" when they relax the requirements for preliminary injunctions. 839 F.3d 1276, 1282 (10th Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)). So "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Id.*;

*accord Okla. by & through Okla. Dep't of Rehab. Servs. v. United States by & through Shanahan*, No. CIV-18-1197-SLP, 2019 WL 7758681, at *2 (W.D. Okla. Apr. 16, 2019) (declining to apply the relaxed test to a motion for a Temporary Restraining Order). Following that same reasoning, *Nken* sets the standard for granting a stay here.

**a. Snap is unlikely to succeed on appeal.**

Regardless of what standard this Court uses, Snap has not carried its burden to even show that its arguments are "so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation," *Mainstream Mktg.*, 345 F.3d at 853, and certainly has not shown that it is likely to succeed on appeal. Snap has presented no reason for this Court to revisit its decision that Snap "failed to identify any conduct that qualifies it as acting under a federal officer." Op. at 12.

Snap cites to a handful of cases to argue that it is "acting under" control of the federal government even though it provides differently tailored services to other customers. But in each of these cases, the government's specifications required the complained-of conduct. In *County Board of Arlington County v. Express Scripts Pharmacy*, Department of Defense contracts required pharmacists to "fill[] certain opioid prescriptions." 996 F.3d 243, 257 (4th Cir. 2021). So the County's allegations that the pharmacy "did nothing to stem the flow of excess opioids" necessarily included the contractually-required dispensing actions. *Id.* Similarly, in *Town of Pine Hill v. 3M Co.*, federal government contracts required 3M to manufacture products using certain chemicals. No. 25-10746, 2026 WL 2589473 (11th Cir. Sep. 2, 2026). So 3M was "fulfill[ing] a basic governmental task that the government otherwise would have had to perform." *Id.* at *3 (quotation omitted). *Chevron USA Inc. v. Plaquemines Parish*, 608 U.S. 1 (2026), does not change the calculus either. There, if Chevron had "refrained from" the challenged actions, its responsibility to fulfill the military's orders "may have suffered." *Id.* at 13. That is not the case

here. Neither Snap's "ordinary commercial relationship" with DHS and the FDA nor its responses to the agencies' "run-of-the-mill editor[ial]" suggestions in emails, Op. at 9, 12, are in the same category of "closely supervised work" that "fulfill[s] basic government needs, accomplish[es] key government tasks, or produce[s] essential government products." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1253 (10th Cir. 2022). And as this Court has already recognized, the Northern District of Florida's view that Snap could prevail on this theory is inconsistent with Tenth Circuit caselaw. Op. at 12 n.5. In any event, showing that views may differ does not show that Snap is likely to succeed in this Circuit, especially when the Florida district court ruling is currently on appeal before the Eleventh Circuit. *Contra* Mot. at 7.

Further, even if Snap prevailed on its argument that it was acting "under the direction of a federal officer," it must still show that Kansas's claims have "a connection or association with government-directed conduct." *Suncor Energy,* 25 F. 4th at 1251. As explained in its remand motion, the Attorney General's claims have nothing to do with Snap's limited work with the FDA and DHS. Remand Mot., Doc. 11 at 10–15 (Dec. 2, 2025). In fact, Snap's contracts with the federal government specifically barred Snap from violating any state law, including the Kansas Consumer Protection Act. *Id.* at 12.

Given the above, Snap has not met its burden to show that it is likely to succeed on appeal.

**b. Snap will not suffer any harm absent a stay.**

Snap cannot show that it will "suffer irreparable harm if forced to spend resources litigating in state court." Mot. at 9 (quotation marks omitted). It is "well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2948.1, at 152–53 (2d ed.1995)). Snap also suggests

that the "*potential* of inconsistent outcomes" and "*risk* of confusion " are sufficient to meet this burden. Mot. at 9 (emphasis added). They are not. Irreparable harm "must be certain, great, actual and 'not theoretical.'" *Heideman*, 348 F.3d at 1189. Snap has not pointed to a single pre-trial issue that would actually create an inconsistent outcome or confusion. And as discussed *infra* in II.b, federal officer removal cases have proceeded post-remand on appeal absent a federal-court stay in several other circuits. These include cases where the courts of appeal have ultimately reversed a district court's remand, demonstrating that state courts may begin the process of pre-trial discovery without irreparably harming claimant's appeal rights. *See, e.g.*, *Plaquemines Parish v. Chevron*, 84 F.4th 362, 378 (5th Cir. 2023). If circumstances change, Snap may seek a stay or abeyance in Kansas state courts. Snap's arguments on this point collapse into its arguments for automatic stays. But, as explained *infra*, Snap is not entitled to a per se finding of harm just because it might begin discovery that will continue in one venue or another. This also cuts against Snap's judicial economy argument: Snap has not pointed to any pre-trial matters that could not be easily moved to federal court if Snap succeeds on its appeal.

**c. The equities favor limiting delay in deciding whether Snap is misrepresenting the mature content on its platform to children and parents.**

The allegations in Kansas's petition show why the public interest weighs strongly in favor of allowing the case to move forward. The petition explains that children in Kansas have died from consuming drugs they purchased from dealers on Snapchat. Petition, Doc. 43 at 13, ¶ 51 (Mar. 3, 2026). Adults regularly solicit sexual images from children over Snapchat. *Id.* at 14–15, ¶¶ 61–64. Videos depicting violence, self-harm, and eating disorders are readily available to children on Snapchat. *Id.* at 16–17, ¶ 71. Snapchat's My AI instructs children on how to physically harm themselves, and how to conceal sexual abuse or drug and alcohol use from their parents. *Id.* at 17–

18, ¶¶ 76–77. While Snap claims it has made its app safer for children, its parental controls are onerous and "challenging for most busy parents." *Id.* at 23, ¶ 99. These concerns might not be so pressing if Snapchat did not also create behavioral addictions in children. *Id.* at 25–30, ¶¶ 106–128. Snap has not fulfilled its "duty to disclose material facts about the addictiveness of the Snapchat app." *Id.* at 31, ¶ 129. And its misrepresentations about the mature content on its app are continuing to harm Kansas children and their parents.

While Snap presumably disputes these allegations, the public interest strongly favors avoiding unnecessary delay in resolving them. In other words, if the State's allegations are correct, the public interest is in protecting children and teens as soon as possible, instead of waiting for Snap to raise attenuated (at best) arguments regarding federal officers. Any reassurance that the State may still eventually seek damages against Snap, Mot. at 10, is a small comfort to the Kansas families who are suffering continued harm from Snap's actions.

## II. Snap Is Not Entitled to an Automatic Stay.

Because Snap cannot meet its burden to "show[] that circumstances justify" a stay here, *Nken*, 556 U.S. at 434, its only hope for relief is an automatic stay. Snap argues that any federal officer removal claim—no matter how far-fetched—requires such a stay. But that rule would force this Court to abdicate its responsibility to "exercise [its] judicial discretion," and would bar courts from considering "the circumstances of the particular case," as required. *Id.* at 433–34.

### a. *Coinbase* does not extend to federal officer removal.

At least nine circuits have declined to issue an automatic stay in the federal officer removal context after *Coinbase*, 599 U.S. at 736. In that case, the Court decided that disputes over the arbitrability of claims are automatically stayed pending appeal. *Id.* at 743. It grounded its decision in the *Griggs* principle, which "divests the district court of its control over those aspects of the

case involved in the appeal." *Id.* at 740 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). In the arbitration context, the entire case is bound up in the appeal, because absent a stay, "many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost." *Id.* at 743. So *Coinbase*'s reasoning applies not only in arbitration, but in "other analogous contexts" where the commencement of litigation *at all* is the harm, like "qualified immunity and double jeopardy." *Id.* at 746. In each of those instances, the "right to an interlocutory appeal would be largely nullified" if the claimant were forced to begin pre-trial proceedings, *id.* at 743, because these contexts "represent an entitlement to avoid litigation altogether." *Cal. by & through Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 771 n.7 (9th Cir. 2025) *cert. denied sub nom. Express Scripts, Inc. v. California*, 146 S. Ct. 1507 (2026).

The federal officer removal statute is not such an "other analogous context." The question is not *whether* litigation will occur, only its location. *Contra City of Brunswick by and through Mayor & Bd. of Commissioners v. Honeywell Int'l, Inc.*, 184 F.4th 1230, 1240 (11th Cir. 2026). And, perhaps recognizing the "destabilizing consequences" of applying *Coinbase*'s rule beyond the arbitration context, the five-justice majority did "not commit, for example, to concluding that appeals over non-arbitration forum-selection clauses warrant the same mandatory stay." *Coinbase*, 599 U.S. at 761 (Jackson, J., dissenting). That hesitancy makes sense, because unlike the arbitration context, "requiring an automatic stay" here "would implicate federalism concerns not at issue where parties seek to compel arbitration." *California*, 139 F.4th at 768. *Coinbase* focused on "the unique aspects of the Federal Arbitration Act," and the "Supreme Court did not receive briefing on the unique federalism issues implicated by the federal officer removal statute." *Id.* While the federal government may "protect federal rights and federal interest[s]," as it does with

the federal officer removal statute, it may only "do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 769 (quoting *Younger v. Harris,* 401 U.S. 37, 44 (1971)). Analogizing a stay pending appeal with the injunctions requested in *Younger*, the Ninth Circuit decided that "an automatic stay pending appeal of a federal officer removal remand order would run afoul of the delicate balance of federalism." *Id.*

As explained *supra*, Snap is unlikely to succeed on its claim that its actions were required by the federal government. Staying issuance of the remand order would only allow Snap to impinge on state sovereignty with a Hail Mary argument that will ultimately fail. There may be other circumstances where a stay may be appropriate under the federal officer removal statute. But that decision should be left to the discretion of each district court. *Id.* (citing *Nken*, 556 U.S. at 428). "Allowing some pretrial litigation to continue on in state court pending federal interlocutory appeal" does not frustrate Congress's goal of providing "a federal *forum* for adjudication of federal immunity defenses and trial on the merits." *Id.* at 771 n.7.

**b. The majority of circuits have rejected automatic stays in this context.**

While the Tenth Circuit has not expressly addressed whether *Coinbase* applies, it has denied a motion to stay in the federal officer removal context under the *Nken* factors even after *Coinbase*. *See* Order, *Lopez v. Murphy*, No. 23-2038 (10th Cir. Sep. 5, 2023), Dkt. 96. And in addition to the Ninth Circuit, the First, Second, Third, Fifth, Sixth, Seventh, and D.C. Circuits have declined to issue automatic stays in the federal officer removal context after *Coinbase*. *See Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 184 n.3 (1st Cir. 2024) (ultimately reversing remand order even though court initially denied stay); Order, *Cnty. of Westchester, et al. v. Express Scripts, Inc.*, *OptumRx Inc*., 24-1639 (2nd Cir. Sep. 6, 2024), Dkt. 72.1 at 2 ("Appellants are not entitled to an automatic stay pending appeal under *Coinbase*"), *rev'd on other grounds*, --- F.4th ---, 2026

WL 2589574 (Sep. 2, 2026) (granting federal officer removal); *AG of N.J. v. Dow Chem. Co.*, 24-1753 (3rd Cir. July 24, 2024) (denying motion to stay pending appeal where movants argued *Coinbase* mandated a stay); *Plaquemines Parish*, 84 F.4th at 378 (lifting district court's imposition of a discretionary stay under *Nken*); *Horton v. Gen. Elec. Co.*, 817 F.Supp.3d 455, 459–463 (W.D. Ky. 2025) (rejecting application of *Coinbase* to federal officer removal cases), *aff'd*, --- F.4th ---, 2026 WL 2654800 (6th Cir. Sep. 9, 2026); Order, *City of Chicago v. BP p.l.c.*, No. 25-1916 (7th Cir. Aug. 1, 2025), Dkt. 73 (denying motion to stay); Order, *In re Clark*, No. 23-7073 (D.C. Cir. Oct. 26, 2023) (rejecting *Coinbase* argument that the "remand order has been automatically stayed pending appeal").

**c. This Court should not follow the minority view.**

Given these continuing developments, the Court need not again follow the Fourth Circuit's minority view that an automatic stay is required. *See Kansas v. Pfizer*, No. 24-1128-DDC-BGS, 2025 WL 1548507, at *3 (D. Kan. May 30, 2025) (citing *City of Martinsville v. Express Scripts*, 128 F.4th 265 (4th Cir. 2025)); *see also City of Brunswick*, 184 F.4th at 1230. The *Martinsville* court expressed concerns that "multiple courts" would take "actions in the same case, on the same issues, at the same time." 128 F.4th at 267. But that will not happen here. *See id.* at 275 (Wynn, J., dissenting). Like any case where courts exercise discretion that they have enjoyed "for centuries," *id.*, two courts may consider *different* issues in a case concurrently. The Tenth Circuit will consider whether Snap is indeed a "federal officer," and the state court will begin pretrial discovery proceedings regarding Snap's misrepresentations and unconscionable conduct in violation of Kansas law. Those latter proceedings would commence in federal court if Snap prevails. *City of Martinsville* did not address the serious federalism concerns with imposing automatic stays hampering state court proceedings. And the Eleventh Circuit's similar decision dismissed the

Ninth Circuit's argument that automatic stays "infringe upon the rights of state courts" as a "free-floating concern" that could not overcome Congress's silence on whether a stay was appropriate. *City of Brunswick*, 184 F.4th at 1241 n.9 (quoting *California*, 139 F.4th at 769) *cert. petition docketed* Sep. 3, 2026. Yet the Eleventh Circuit's decision only highlights how automatic stays intrude on state courts' authority when the court there declared ongoing state court litigation "void." *Brunswick*, 184 F.4th at 1237.

As the circuits continue to weigh in to protect district courts' traditional discretion to issue a stay pending appeal, there is no reason for this Court to hamstring itself based on a minority view. There may, of course, be some instances where a colorable federal officer removal claim merits a stay pending appeal. But that is not this case. Permitting automatic stays here would incentivize gamesmanship and invite strained federal officer arguments that will infringe on state sovereignty as they needlessly delay state-court proceedings on the merits of serious claims. Denying the stay here will also give the Tenth Circuit an opportunity to definitively decide this issue, because Snap has already indicated that it will appeal if its motion is denied. *See* Mot. at 10.

## CONCLUSION

The Court should deny Snap Inc.'s motion for a stay pending appeal.

Dated: September 18, 2026

Respectfully submitted,

*/s/ Nathaniel J. Castillo*
Paul Shipp (KS #20263)
Assistant Attorney General
Nathaniel J. Castillo (KS #28584)
First Assistant Attorney General
Office of the Attorney General
Public Protection Division
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
Tel: 785-296-3751
Fax: 785-291-3699
paul.shipp@ag.ks.gov
nathaniel.castillo@ag.ks.gov

David H. Thompson*
Brian W. Barnes*
Megan M. Wold*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
mwold@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States District Court for the District of Kansas by using the CM/ECF system on September 18, 2026. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Dated: September 18, 2026

/s/ *Nathaniel J. Castillo*
Attorney for Plaintiff